IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVES SICRE DE FONTBRUNE,<br><br>    Plaintiff,<br><br>v.<br><br>ALAN WOFSY, ALAN WOFSY & ASSOCIATES, and DOES 1 through 100, inclusive,<br><br>    Defendants. | Case No. 13-cv-05957-SC<br><br>ORDER VACATING MARCH 12, 2014 ORDER AND GRANTING MOTION TO DISMISS |

## I. INTRODUCTION

Now before the Court is Defendants Alan Wofsy and Alan Wofsy & Associates' (collectively, "Defendants") motion for leave to file a motion for reconsideration of the Court's March 12, 2014 Order granting in part and denying in part Defendants' motion to dismiss. ECF No. 26. Having reviewed the motion, along with the papers originally submitted in connection with the motion to dismiss, the Court concludes that its previous finding concerning judicial notice of foreign laws was in error. Accordingly, the Court VACATES the March 12, 2014 Order and enters this amended Order on

1 Defendants' motion to dismiss.  No further briefing is necessary,
2 and the Court limits its discussion to the issues raised in the
3 papers filed in connection with Defendants' motion to dismiss.  ECF
4 Nos. 9 ("MTD"), 18 ("Opp'n"), 19 ("Reply").  For the reasons set
5 forth below, Defendants' motion to dismiss is GRANTED.

**II. BACKGROUND**

The following facts are taken from Plaintiff's Complaint along with the exhibits attached thereto.  The instant action arises out of a copyright suit Plaintiff filed against Defendants in the French courts in 1996.  Compl. Ex. 2 ("2001 J." (translation)) at 1.  In the French action, Plaintiff claimed to have artistic and literary property rights to a catalog of the works of Pablo Picasso created by Christian Zervos (the "Zervos works").  Plaintiff asserted claims for copyright infringement and unfair competition against Defendants based on their alleged reproduction of the Zervos works in two catalogs of Picasso artwork.  Id.

The trial court held Defendants harmless in the action and declared Plaintiff's claims "inadmissible[] due to his lack of proof of his locus standi."  Id. at 2.  On September 26, 2001, the Paris Court of Appeals reversed.  Id. at 12.  The court held Defendants liable for copyright infringement, prohibited Defendants from using Zervos's photographs under penalty of "astreinte"[1] of F 10,000 per discovered breach, ordered the destruction of the infringing materials, and awarded Plaintiff F 800,000 in pecuniary damages and F 50,000 in costs.  Id. at 12-13.  Defendants appealed

---

[1] As discussed below, the parties disagree on the precise translation of astreinte in this context.  Plaintiff claims it means damages, while Defendants claim it means penalty.

2

1  this judgment, but their appeal was dismissed.  Compl. ¶ 9.

2  　　　In or around 2011, Plaintiff brought a case against Defendants
3  before a French enforcement judge concerning the 2001 Judgment of
4  the Paris Court of Appeals.[2]  Compl. Ex. 6 ("2012 J."
5  (translation)) at 3.  On January 10, 2012, the court rendered a
6  judgment in the action.  The court's description of the underlying
7  facts and claims is vague, at least in the translation provided by
8  Plaintiff, and Plaintiff's pleading does nothing to clarify the
9  matter.  However, it appears the court found that Defendants had
10 violated the terms of the 2001 Judgment.  The court awarded
11 Plaintiff € 2,000,000 in "liquide l'astreinte" and € 1,000 for
12 costs.  Compl. Exs. 5, 6 at 3-4.

13 　　　In September 2011, Plaintiff and Éditions Cahiers D'art filed
14 another suit against Defendants concerning "works dedicated to the
15 works of Picasso" before the Tribunal de Grande Instance de Paris.
16 Compl. Ex. 16 ("2013 J." (translation)) at 2.  Defendants did not
17 engage an attorney for the proceeding.  Id. at 3.  On January 13,
18 2013, the tribunal found that Plaintiff lacked locus standi to
19 bring his claims for copyright infringement because, on December
20 20, 2001, he transferred his intellectual property rights in the
21 works to Cahier D'art Holding.  Id. at 4.  The tribunal concluded
22 that Plaintiff's claims against Defendants were "inadmissible" and
23 ordered Plaintiff to pay the costs of the proceedings.  Id.

24 　　　Plaintiff filed the instant action in California state court
25 on November 14, 2013.  Defendant subsequently removed on diversity
26 grounds.  Pursuant to the Uniform Foreign-Country Money Judgments

---

[2] There appears to be a typo in the French Judgment, which is repeated in the translation, setting the date of the underlying judgment at September 26, 2011, rather than September 26, 2001.

Recognition Act ("UFCMJRA"), Cal. Code Civ. Proc. § 1713 et seq., Plaintiff demands that "the judgment of the Paris Court of Appeals be recognized as [a] valid judgment for Plaintiff and be entered as a California judgment." Id. pg. 6. Plaintiff seeks a total sum of $2,688,101.03, which is allegedly the United States dollar equivalent of the € 2,001,000 awarded in the 2012 Judgment. Id. There is no indication that Plaintiff is seeking a California judgment in connection with the 2001 Judgment.

### III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

///
///
///

4

## IV. DISCUSSION

### A. Procedural Matters

Plaintiff attached the 2001, 2012, and 2013 judgments to his Complaint, along with English translations of those judgments. Defendants object to the translations as inaccurate, and have offered purportedly accurate translations of their own. ECF No. 12 ("Obj.") at 3. Defendants have also submitted the declaration of Vonnick le Guillou, an attorney licensed to practice in France, on certain issues of French law relevant to the instant dispute. ECF No. 9-2 ("Guillou Decl."). In response to the Guillou Declaration, Plaintiff has submitted a declaration on French law by Christopher J. Mesnooh, an attorney admitted to the Paris bar. ECF No. 18-1 ("Mesnooh Decl.").

Plaintiff argues that the Court should strike the translations submitted by Defendants, along with the Guillou Declaration, on the ground that the Court should limit its analysis to the pleadings on a Rule 12(b)(6) motion to dismiss. Since the Court need not refer to Defendants' translations to resolve the instant dispute, it does not rule on Plaintiffs' objections to them. Plaintiffs' objection to Guillou Declaration is OVERRRULED. Pursuant to Federal Rule of Civil Procedure 44.1, the Court may consider any relevant material or source in determining foreign law, regardless of whether that material is otherwise admissible under the Federal Rules of Evidence. Plaintiff argues that the Court should decline to make determinations of foreign law at the pleading stage since the record is not yet fully developed and the Court should not merely resort to "simply picking one French lawyer's declaration . . . or another's." ECF No. 24. However, pursuant to Rule 44.1, the Court

5

is not limited to considering the materials submitted by the parties in resolving issues of foreign law. While expert testimony may be useful, it is not "an invariable necessity in establishing foreign law." Access Telecom, Inc. v. MCI Telecomms. Corp., 197 F.3d 694, 713 (5th Cir. 1999) (internal quotations omitted).

As determinations of foreign law are issues of law, not fact, the Court takes judicial notice of the declarations submitted by both Guillou and Mesnooh, but only insofar as they relate to French law.[3]

**B.  The 2001 Judgment**

Defendants argue that recognition of the 2001 Judgment is barred by the UFCJMRA's ten-year statute of limitations. Mot. at 5 (citing Cal. Code Civ. Proc. § 1721). Plaintiff does not respond to this argument, though it appears that he is not seeking to enforce the 2001 Judgment. The Complaint's prayer seeks only $2,688,101.03, the U.S. dollar equivalent of the 2012 Judgment. To the extent that Plaintiff is seeking enforcement of the 2001 Judgment, his claim is DISMISSED.

**C.  The 2012 Judgment**

Defendants argue that the 2012 Judgment is unenforceable because: (1) Plaintiff lacks standing to enforce the 2012 Judgment because he sold his rights to the Zervos works in 2001; and (2) the judgment is for a fine or a penalty, neither of which are cognizable under the UFCMJRA. The Court rejects the first argument but finds the second persuasive.

---

[3] Guillou also submitted a declaration in support of Defendants' reply brief. ECF No. 22 ("Guillou Reply Decl."). Plaintiff objects to the Guillou Reply Declaration on the ground that Defendants should not be allowed to raise new arguments on reply. Guillou's reply declaration does not change the Court's analysis.

### 1. **Plaintiff's Standing**

Defendants argue that Plaintiff lacks standing to enforce the 2012 Judgment because he transferred his rights to the Zervos works in 2001. MTD at 10-11. As an initial matter, this argument conflates Plaintiff's locus standi in the French court and his standing in this Court. Plaintiff is not suing for copyright infringement in the instant action -- he is suing to enforce the 2012 Judgment issued by the French court. Thus, the pertinent question with respect to standing is whether Plaintiff has an interest in the 2012 Judgment, not whether he has an interest in the Zervos works. As the 2012 Judgment ordered Defendants to pay € 2,001,000 to Plaintiff specifically, Defendants cannot dispute that Plaintiff has an interest in enforcing that judgment. Instead, Defendants are essentially challenging Plaintiff's standing in the 2012 French action. The Court leaves this issue to the French courts.

To the extent that the Court can review the accuracy of the 2012 Judgment, it would need to look outside of the pleadings to do so. Defendants point out that the 2013 Judgment, which is attached to Plaintiff's pleading, states that Plaintiff transferred his rights to the Zervos works to Cahier D'Art Holding Limited on December 21, 2001. However, "[f]actual findings in one case are not ordinarily admissible for their truth in another case through judicial notice." Wyatt v. Terhune, 315 F.3d 1108, 1114 n.5 (9th Cir. 2003). And though the Court is not bound by the allegations in Plaintiff's Complaint when they are contradicted by the exhibits attached thereto, the 2012 Judgment, which is also attached to the Complaint, implicitly holds that Plaintiff did have locus standi in

7

the 2012 action. Defendants are essentially asking that the Court find that the 2012 Judgment was in error and the 2013 Judgment was not, when the reverse might be true. Under the UFCMJRA, the Court has the discretion to refuse to recognize a foreign judgment where it conflicts with another final and conclusive judgment. See Cal. Code Civ. Proc. 1716(c)(4). The Court declines to exercise its discretion before it has had the opportunity to review the evidence concerning Plaintiff's rights to the Zervos works.

While the Court may not take judicial notice of the truth of the matters asserted in the 2013 Judgment, it may take judicial notice of the judgment's legal effect. If the 2012 Judgment is no longer final, enforceable, or conclusive on account of the 2013 Judgment, the Court could not enforce it under the UFCMJRA. See id. § 1715(a)(2). According to Guillou, it is "very likely" that Plaintiff did not inform the enforcement judge that he transferred his commercial rights to the photographs in 2001 and such concealment could form grounds for a motion for revision of the 2012 Judgment, pursuant to Article 595 of the French Code of Civil Procedure. Guillou Decl. ¶ 19. However, under Article 596 of the French Code of Civil Procedure, the statute of limitations for a motion for revision is two months, and it begins to run from the date on which a party is aware of the grounds for the revision upon which it relies. There is no indication that Defendants have filed such a motion, though they were clearly aware of possible grounds for revision of the 2012 Judgment when this motion was filed over two months ago. At the pleadings stage, the Court declines to speculate as to whether Defendants could file or have filed a

motion for revision within the statute of limitations.[4]

Accordingly, the Court declines to dismiss Plaintiff's case based on a lack of standing.

### 2. Penalty

Defendants argue that the 2012 Judgment is a penalty and is therefore not cognizable under the UFCMJRA. The Court first reviews the standard for determining whether a judgment constitutes a penalty and then applies this standard to the 2012 Judgment.

#### a. Penalty Standard

The UFCMJRA applies to a foreign-country judgment to the extent that judgment both (1) "[g]rants or denies recovery of a sum of money" and (2) "[u]nder the law of the foreign country where rendered is final, conclusive, and enforceable." Cal. Code Civ. Proc. § 1715(a)(1)-(2). The statute "does not apply to a foreign-country judgment, even if the judgment grants or denies recovery of a sum of money," to the extent that the judgment is a "fine or other penalty." Id. § 1715(b), (b)(2).

In determining whether a foreign-country judgment is a penalty for the purposes of the UFCMJRA, a court must determine whether the purpose of the judgment "is to punish an offense against the public justice of the State, or to afford a private remedy to a person injured by the wrongful act." Java Oil Ltd. v. Sullivan, 168 Cal. App. 4th 1178, 1187 (Cal. 2008) (quoting Huntington v. Attril, 146 U.S. 657, 673-74 (1892)). "The test is not by what name the statute is called by the legislature or the courts of the State in

---

[4] Even if Defendants decline to file a motion for revision, the Court may choose not to enforce the 2012 Judgment if it was obtained by fraud or is repugnant to public policy. Cal. Code Civ. Proc. § 1716(c)(2)-(3). These issues are not amenable for resolution at this stage of the litigation.

which it was passed, but whether it appears . . . to be in its essential character and effect, a punishment of an offence against the public, or a grant of a civil right to a private person." Id. (quoting Huntington, 146 U.S. at 683). A penal statute is one "that awards a penalty to the state, or to a public officer in its behalf, or to a member of the public, suing in the interest of the whole community to redress a public wrong. . . . . The purpose must be, not reparation to one aggrieved, but vindication of the public justice." Id. (quoting Cavarria v. Sup. Ct., 40 Cal. App. 3d 1073, 1077 (Cal. Ct. App. 1974)).

Applying these principles in Java Oil, the California Supreme Court found that a foreign judgment awarding attorney fees was cognizable under the UFCMJRA. The court reasoned that the defendant was being ordered to compensate the plaintiffs for fees they incurred in defending a lawsuit, the award was payable to the plaintiffs rather than to the state, the judgment arose from a civil action, and the damages were not designed to provide an example or punish the defendant. Id. at 1188.

In an earlier case, the California Supreme Court also found that penal section 205(e) of the Emergency Price Control Act of 1942 was penal. Miller v. Mun. Court, 22 Cal. 2d 818, 838 (Cal. 1943). That law allowed purchasers of commodities sold in violation of a government price schedule to sue for either $50 or treble the amount of the overcharge. Id. The court reasoned that though the fines were payable to private citizens, the primary purpose of providing for consumer actions was to aid in the enforcement of the act, and that the penalties authorized by the statute were intended to serve as a deterrent. Id. at 839.

10

1    The Ninth Circuit also addressed the issue of penalties under
2 the UFCMJRA in Yahoo! Inc. v. La Ligue Contre Le Racisme Et
3 L'Antisemitisme, 433 F.3d 1199 (9th Cir. 2006).  In that case, a
4 French court entered an order requiring Yahoo! to block French
5 citizens' access to Nazi material displayed on Yahoo!'s website.
6 Id. at 1202-03.  The French order stated that Yahoo! was subject to
7 a penalty of € 100,000 per day of delay or per confirmed violation.
8 Id. at 1203.  The Ninth Circuit found that it "exceedingly
9 unlikely" that the French judgment could be enforced under the
10 UFCMJRA because the judgment was a penalty.  Id. at 1218.  First,
11 the court noted that the word used by the French court,
12 "astreinte," was consistently translated as a "penalty" in the
13 record.[5]  Id. at 1219.  Second, Yahoo! had been held liable for
14 violating a section of the French penal code, and the judgment did
15 not lose its penal nature merely because private litigants
16 initiated the action.  Id.  Third, the court observed that the
17 penalties were designed to deter Yahoo! from creating "a threat to
18 public order" and were payable to the government.  Id. at 1220.
19    In sum, courts generally balance a number of factors in
20 determining whether an award is an unenforceable penalty under the
21 UCMJRA: (1) does the award compensate the plaintiff for damages or
22 punish the defendant for an offense against the public, (2) is the
23 award payable to the plaintiff or to the state, (3) does the
24 judgment arise from a civil action or a penal statute, (4) are the
25 damages intended to provide an example and deterrence, and (5) does

---

[5] Defendants argue that the Ninth Circuit's translation of astreinte in Yahoo! controls the outcome of the instant dispute. The Court disagrees.  The Ninth Circuit looked beyond the literal translation of astreinte and considered its function in the underlying French action.  The Court does the same here.

11

the judgment impose a mandatory fine, sanction, or multiplier on the defendant. See Plata v. Darbun Enterprises, Inc., 09CV44-IEG CAB, 2009 WL 3153747, at *6 (S.D. Cal. Sept. 23, 2009).

### b. Application to the 2012 Judgment

With the above framework in mind, the Court examines whether the € 2 million awarded as astreinte in the 2012 Judgment constitutes a penalty. The Court concludes that it does.

Guillou, Defendants' declarant, states that astreinte is independent of damages, and that French courts award an astreinte to deter parties from noncompliance with a judgment or to punish parties for failing to comply. Guillou Decl. ¶¶ 12-13. Guillou also states that the amount of astreinte is fixed by "taking into account the behavior of the defendant and the difficulties he has met to comply with the judgment," rather than the damages suffered by the plaintiff. Id. ¶ 14. Finally, Guillou asserts that the concept of astreinte was created by French judges during the Nineteenth Century, when they did not have the means to coerce compliance with their civil orders. Guillou Reply Decl. ¶ 9. Mesnooh, Plaintiff's declarant, agrees that the intent of astreinte is to compel a party to comply with a judgment. Mesnooh Decl. ¶ 27. However, Mesnooh contends that astreinte cannot be considered a fine or a penalty because it is a personal remedy which goes entirely to the party seeking the enforcement of the court decision. Id. ¶¶ 29-30.

On balance, the Court finds that the award of an astreinte in this case constitutes a penalty for the purposes of the UFCMJRA. As Plaintiff points out, the astreinte arises out of a civil matter vindicating Plaintiff's copyrights and is payable to Plaintiff, not

12

to the state or the court. Opp'n at 9. However, this does not end the inquiry. The primary purpose of the astreinte was not to remedy harm to Plaintiff, but to coerce compliance with the 2001 injunction. There is no indication that the French court even considered Plaintiff's damages when it fixed the astreinte. Instead, it engaged in a mechanical calculation, multiplying the number of discovered violations by ₣ 10,000 -- the amount set by the 2001 Judgment -- and converting the product from Francs to Euros. 2012 J. at 3. Moreover, the court noted that it could properly consider "the behaviour of the [Defendants], and the difficulties that [they] encountered in executing [the injunction]." Id. The court's focus on Defendants' behavior and disregard of Plaintiff's damages underscores the penal nature of the astreinte.

It is possible that a portion of the astreinte awarded is compensatory, since assuming he continued to hold the rights to the Zervos works, Plaintiff may have been harmed by Defendants' repeated violation of the 2001 injunction. However, the French court did not delineate between the compensatory and punitive aspects of the award. In any event, it appears that the compensatory portion is minimal. The amount of the 2012 Judgment (the equivalent of about ₣ 14 million) is over eighteen times larger than the amount of the original 2001 Judgment (₣ 800,000), despite the fact that the court awarded the astreinte based on the examination of just two infringing works. 2012 J. at 3.

Accordingly, the Court finds that the € 2 million awarded as astreinte in the 2012 Judgment is a penalty and therefore not cognizable under the UFCMJRA. Though neither party addresses the

13

issue, the Court also finds that the € 1,000 in costs awarded by the 2012 Judgment is also not cognizable, as it was awarded in connection with a punitive award.

**V.   CONCLUSION**

For these reasons, the Court VACATES the March 12, 2014 Order and GRANTS Defendants' motion to dismiss.  This action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

March 26, 2014

UNITED STATES DISTRICT JUDGE