1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2      Including Professional Corporations
    NEIL A.F. POPOVIC, Cal. Bar No. 132403
3  Email: npopovic@sheppardmullin.com
    Four Embarcadero Center, 17th Floor
4  San Francisco, California 94111-4109
    Telephone:    415.434.9100
5  Facsimile:     415.434.3947

6  SHANNA M. PEARCE, Cal. Bar No. 272430
    Email: spearce@sheppardmullin.com
7  12275 El Camino Real, Suite 200
    San Diego, California 92130-2006
8  Telephone:    858.720.8900
    Facsimile:     858.509.3691
9
    Attorneys for Defendants ALAN WOFSY and
10 ALAN WOFSY & ASSOCIATES

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13

14 | VINCENT SICRE DE FONTBRUNE; LOAN | Case No. C 13-05957 EJD-NC
15 | SICRE DE FONTBRUNE; ADEL SICRE DE |
   | FONTBRUNE; ANAIS SICRE DE | **DEFENDANTS' REPLY IN SUPPORT OF**
16 | FONTBRUNE, in their capacity as personal | **MOTION FOR SUMMARY JUDGMENT**
   | representatives of the Estate of Yves Sicre de | **AND OPPOSITION TO PLAINTIFFS'**
17 | Fontbrune, | **CROSS-MOTION FOR SUMMARY**
   | | **JUDGMENT**
18 | Plaintiff, |
   | | Judge:    Hon. Edward J. Davila
19 | v. | Date:     September 6, 2018
   | | Time:     1:30 p.m.
20 | ALAN WOFSY, an individual; ALAN | Ctrm:     4, Fifth Floor
   | WOFSY & ASSOCIATES; DOES 1 through |
21 | 100, inclusive, | [Complaint filed Nov. 14, 2013]
22 | Defendants. |
23

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ................................................................................................................1

II. FACTS AND EVIDENCE ...................................................................................................2

  A.  The Facts Material to Defendants' Motion are Undisputed ......................................2

  B.  Plaintiff's "Facts" Are Not Supported by Admissible Evidence. ..............................3

III. THE 2012 JUDGMENT IS NOT SUBJECT TO RECOGNITION ....................................5

  A.  The French Court Lacked Personal Jurisdiction over Defendants ............................5

      1.  Defendants were not served, and de Fontbrune did not make
          reasonable efforts. .........................................................................................6

      2.  Defendants did not receive adequate notice of the proceedings in
          time to defend. ...............................................................................................8

      3.  Defendants did not have minimum contacts with France. ............................9

      4.  Defendants have not waived objection to personal jurisdiction. ...................9

  B.  The French Court Lacked Subject Matter Jurisdiction ...........................................10

  C.  The 2012 Judgment Was Obtained by Fraud ..........................................................13

  D.  The 2012 Judgment is Repugnant to U.S. Public Policy ........................................13

  E.  The 2012 Judgment Conflicts With Another Final and Conclusive Judgment ........14

  F.  The 2012 Judgment Was Rendered in Circumstances That Raise Substantial
      Doubt about the Integrity of the Underlying Proceedings ......................................14

  G.  The Proceedings Leading to the 2012 Judgment Were Not Compatible With
      the Requirements of Due Process ...........................................................................15

IV. CONCLUSION .................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>FEDERAL CASES</u>

*Backjoy Orthotics, LLC v. Forvic Int'l Inc.*
  2016 WL 7664290 (M.D. Fla. Mar. 7, 2016) ................................................................7

*Bank of Montreal v. Kough*
  612 F.2d 467 (9th Cir. 1980) ......................................................................................5

*Chevron Corp. v. Donzinger*
  886 F. Supp. 2d 235 (S.D.N.Y. 2012) ........................................................................10

*Iraq Middle Market Dev. Foundation v. Harmoosh*
  175 F. Supp. 3d 567 (D. Md. 2016) ..........................................................................13

*Kulko v. Superior Court*
  436 U.S. 84 (1978) .....................................................................................................5

*Lang v. Morris*
  823 F. Supp. 2d 966 (N.D. Cal. 2011) ........................................................................9

*Mullane v. Central Hanover Bank & Trust Co.*
  339 U.S. 306 (1950) ...................................................................................................7

*Ohno v. Yasuma*
  723 F.3d 984 (9th Cir. 2013) ....................................................................................14

*Omni Capital Intern. Ltd. v. Rudolf Wolff & Co. Ltd.*
  484 U.S. 97 (1987) .................................................................................................3, 6

*In re Oracle Corp. Sec. Litig.*
  627 F.3d 376 (9th Cir. 2010) ......................................................................................2

*Righthaven LLC v. Hoehn*
  716 F.3d 1166 (9th Cir. 2013) ..................................................................................11

*S.C. Chimexim S.A. v. Velcro Enterprises, Ltd.*
  36 F. Supp. 2d 206 (S.D.N.Y. 1999) ........................................................................10

*SARL Louis Feraud Int'l v. Viewfinder, Inc.*
  489 F.3d 474 (2d. Cir. 2007) ....................................................................................14

*School Dist. No. 1J v. ACandS Ins.*
  5 F.3d 1255 (9th Cir. 1993) ........................................................................................4

*Swift v. Pandey*
  2016 WL 1117950 (D.N.J. Mar. 22, 2016) ................................................................7

*U.S. v. Al-Shawaf*
   2017 WL 6001273 (C.D. Cal. Nov. 8, 2017) ...................................................................4

*U.S. v. Dibble*
   429 F.2d 598 (602) (9th Cir. 1970) ...............................................................................4

### STATE CASES

*Akande v. Transamerica Airlines, Inc.*
   2007 Del. Ch. LEXIS 68 (Del. Ch. Feb. 2, 2007) ......................................................10

*AO Alfa-Bank v. Yakolev*
   21 Cal. App. 5th 189 (2018) .........................................................................................7

*Cadle Co. II, Inc. v. Fiscus*
   163 Cal. App. 4th 1232 (2008) .....................................................................................9

*CIBC Mellon Trust Co. v. Mora Hotel Corp. N.V.*
   792 N.E. 2d 155 (N.Y. 2003) ......................................................................................10

*Donel, Inc. v. Badalian*
   87 Cal. App. 3d 327 (1978) ......................................................................................6, 7

*Goldman v. Simpson*
   160 Cal. App. 4th 255 (2008) .......................................................................................9

*Julen v. Larsen*
   25 Cal. App. 3d 325 (1972) .....................................................................................8, 15

*Pentz v. Kuppinger*
   31 Cal. App. 3d 590 (1973) .........................................................................................13

### FEDERAL STATUTES, RULES & CONSTITUTIONAL PROVISIONS

Federal Rules of Civil Procedure
   44.1 ...............................................................................................................................4
   56(e) ..............................................................................................................................4

Federal Rules of Evidence
   401 .............................................................................................................................4, 5
   403 .............................................................................................................................4, 5
   602 .............................................................................................................................4, 5
   801 .............................................................................................................................4, 5
   1002 ...........................................................................................................................4, 5

U.S. Constitution, First Amendment .............................................................................14

DEFENDANTS' REPLY ISO SUMMARY JUDGMENT & OPP. TO CROSS-MOTION

## STATE STATUTES

California Code of Civil Procedure
  § 415.50, California Judicial Council Comment ..................................................6
  § 1713-1724 ..................................................................................................1
  § 1716 ............................................................................................................1
  § 1716(b)(2) ........................................................................................1, 5, 11
  § 1716(b)(3) ..................................................................................................1
  § 1716(c)(2) ..................................................................................................1
  § 1716(c)(3) ..................................................................................................1
  § 1716(c)(7) ................................................................................................15
  § 1716(c)(8) ..................................................................................................2
  § 1717 ............................................................................................................1

## OTHER AUTHORITIES

https://www.courdecassation.fr/jurisprudence_2/p._b._22450.html ...................11

https://www.hcch.net/en/states/authorities/details3/?aid=279 .........................9

Restatement (Fourth) of the Foreign Relations Law of the United States § 403(f) (2014) ...............5

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

## I.     INTRODUCTION

Although the interests of comity generally favor recognition of foreign judgments, this case demonstrates why courts in California must give due consideration to the defenses available under the Uniform Foreign-Country Money Judgments Recognition Act, Cal. Code Civ. Proc. §§ 1713-1724 ("UFCMJRA").[1] Defendant need only establish one such defense to avoid recognition; in this case Defendants have established no less than eight defenses:

1.     The court that rendered the foreign judgment lacked personal jurisdiction over Defendants, § 1716(b)(2), because Defendants were not served with the summons and complaint, and they lacked sufficient contacts with France.

2.     The foreign court lacked subject matter jurisdiction, § 1716(b)(3), because original plaintiff Yves Sicre de Fontbrune lacked standing, having transferred his rights in the copyright and the *astreinte* prior to commencing the enforcement action that led to the 2012 Judgment.

3.     Defendants did not receive adequate notice of the proceedings leading to the foreign judgment, § 1716(c)(1), because Defendants did not receive the summons and complaint, and subsequent receipt of a French-language decision does not vitiate the lack of notice.

4.     The foreign judgment resulted from fraud upon the French court, § 1716(c)(2), because de Fontbrune hid from that court that he had transferred the copyrights and the *astreinte*.

5.     The claim upon which the foreign judgment was based is repugnant to California and U.S. public policy, § 1716(c)(3), because punishing Defendants for fair use of documentary photographs is antithetical to the core values of the First Amendment.

6.     The foreign judgment conflicts with a later final and conclusive judgment, § 1716(c)(4), namely the 2013 French judgment in which the court found de Fontbrune lacked standing to enforce the copyrights at issue.

---

[1] Sections 1716 and 1717 were amended in 2017, renumbering and revising to reflect existing interpretation and application of the prior statute. Defendants' Motion cited to the numbering of the amended statute. Plaintiffs pointed out that, per recent case law, the amendments are not retroactive. Accordingly, this Reply/Opposition uses the numbering of the prior version. All further code references are to the California Code of Civil Procedure.

7.      The foreign judgment was obtained in circumstances that raise substantial doubt about the integrity of the rendering court with respect to the judgment, § 1716(c)(7), because the French court failed to examine its own jurisdiction, or to evaluate the evidence of Defendants' purported violation of the *astreinte*.

8.      The specific proceedings leading to the foreign judgment were not compatible with the requirements of due process, § 1716(c)(8), because Defendants did not receive sufficient notice of the underlying proceedings.

Plaintiffs have not presented any admissible evidence to dispute the facts that entitle Defendants to judgment as a matter of law.

## II.      FACTS AND EVIDENCE

**A.      The Facts Material to Defendants' Motion are Undisputed**

Plaintiffs purport to dispute some of Defendants' facts, but they have not introduced any admissible evidence that contradicts the evidence submitted by Defendants.  Mere argument does not create a material issue of disputed fact. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) ("The nonmoving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue. . . . [It] must come forth with evidence from which a jury could reasonably enter a verdict in the non-moving party's favor.").  It remains undisputed that—

- De Fontbrune obtained a default money judgment against Defendants for alleged violation of a 2001 injunction (*astreinte*) against infringement of copyrights ("liquidation of *astreinte*"), based on a 2011 complaint that misrepresented to the French court that de Fontbrune at that time owned the copyrights and the *astreinte* (Facts 29-30).[2]

- De Fontbrune had in fact transferred those intellectual property rights only months after the *astreinte* was issued in 2001 (Fact 26).

- De Fontbrune admitted in a separate copyright infringement case that in 2001 he transferred away his rights in both the intellectual property *and* the *astreinte* (Fact 28).

- The copyrights at issue relate to photographs of Picasso's artwork (Facts 34-35).

---

[2] Plaintiffs claim to "dispute" this fact, but they do not dispute that de Fontbrune claimed to be the then-current owner of those rights, or that his claim was false.

- Defendants were not served with the 2011 summons and complaint, although Defendants received French legal documents in other actions by Plaintiffs around the same time at the same addresses de Fontbrune claimed were inoperative, and that other addresses for Defendants were publicly available (Facts 6-7, 12-16).

- Defendants' first notice of the enforcement case was a notification, only in French, which stated that a hearing had already occurred and the proceedings would be re-opened so *Plaintiff* could submit proof of service, with no information about whether or how Defendants could defend themselves in the underlying case and no copy of the Complaint or exhibits (Facts 7-8).

- De Fontbrune obtained a default judgment in the enforcement action, and the French court awarded the amount he requested in his complaint (Facts 47, 50).

- Another French court ruled in 2013 that because of the 2001 transfer, de Fontbrune lacked standing to sue for infringement of the copyrights (Fact 31).

- Defendants were unaware of de Fontbrune's 2001 transfer until they received a copy of the 2013 judgment in the instant proceedings (Fact 32).

Plaintiffs have proffered testimony by their attorneys about the contents and significance of the briefing and decisions in the pending French revision action, although no actual court orders. Plaintiffs know that the French courts considering the revision action to date have rested their decisions on procedural grounds; they have not addressed the merits of Defendants' arguments. Opp. at 7; Serre Decl. ¶¶ 12-13. Whether Defendants received a copy of the 2012 Judgment *after it was rendered* (Serre Decl. ¶ 14) may be relevant to the timeliness of the revision action but it is irrelevant here, where the key question for purposes of due process and personal jurisdiction is the adequacy of service of the summons and initiating documents at the *commencement* of the underlying enforcement action. *Omni Capital Intern. Ltd. v. Rudolf Wolff & Co. Ltd.*, 484 U.S. 97, 104 (1987).

**B.      Plaintiff's "Facts" Are Not Supported by Admissible Evidence.**

Most of the evidence offered by Plaintiffs comprises attorney fact declarations that lack foundation, and the rest consists of counsel's interpretations of documents offered in lieu of the documents themselves. Such testimony is inadmissible because it is not based on personal

knowledge, constitutes hearsay, and is not the best evidence of the documents; some testimony is further inadmissible as irrelevant, misleading, and unduly prejudicial. Fed. R. Civ. Proc. 56(e); Fed. R. Evid. 401, 403, 602, 801 & 1002. The declaration of Eric Serre, a French attorney who by his own admission has only recently begun to represent Plaintiffs, is at most admissible for the limited purpose of proving foreign law (and even then, subject to substantive challenge). Federal Rule of Civil Procedure 44.1 relaxes evidentiary rules for documents and testimony to prove foreign law—it does not open the door for foreign counsel to testify about facts outside his personal knowledge.

Attorney declarations of facts cannot substitute for percipient witness testimony and original documentary evidence. Fed. R. Civ. Proc. 56(e); *U.S. v. Dibble,* 429 F.2d 598 (602) (9th Cir. 1970) (declarations submitted in connection with summary judgment must demonstrate that declarant has personal knowledge); *School Dist. No. 1J v. ACandS Ins.*, 5 F.3d 1255, 1261 (9th Cir. 1993) (attorney affidavit properly excluded where it contained factual testimony based only on the content of documents but did not attach documents); *U.S. v. Al-Shawaf*, 2017 WL 6001273, at *4 (C.D. Cal. Nov. 8, 2017) (attorney declaration that summarized other documents inadmissible for lack of personal knowledge and as hearsay). The Court should strike such testimony from the record.

The following attorney testimony is inadmissible because not based on personal knowledge of the declarant: Mooney Decl. ¶ 3 (regarding the "likely" number of hours spent on Defendants' case by "very high-level counsel" and Mr. Wofsy's financial means[3]); Serre Decl. ¶¶ 7 (asserting that Defendants did not pay 2001 Judgment and failed to "cease their infringing conduct"), 8-9 (regarding events and propriety of service), and 10 (regarding existence and liability of Alan Wofsy Fine Arts LLC). Fed. R. Evid. 602.

The following testimony is *further* inadmissible because it comprises counsel's interpretation of documents not in the record, and violates the best evidence rule: Mooney Decl.

---

[3] Mooney's speculation about Mr. Wofsy's financial status is further inadmissible as irrelevant, speculative, and unfairly prejudicial; it does not relate to any claim or defense in this case. Fed. R. Evid. 401, 403, 602.

¶ 4 (Secretary of State records[4]); Serre Dec. ¶¶ 2 (briefs in legal proceedings from 1996), 6 (unidentified legal documents from French proceedings), 9 (notifications by mail), and 12-14 (briefs and orders in French revision action). Fed. R. Evid. 602, 1002.

The following testimony is *further* inadmissible because it is based on out-of-court statements offered for the truth of the matter asserted and no hearsay exception has been established: Mooney Decl. ¶¶ 2 (unidentified Secretary of State records), 3 (unidentified property records), 5 (unidentified documents regarding service attempts and "city records and aerial photographs"), and 9 (archival exchange rate data "on the internet"); Serre Decl. ¶¶ 5 (French court order from 2007) and 9 (regarding notifications by mail). Fed. R. Evid. 602, 801, 1002. The internet blog article attached as Exhibit A to the Mooney declaration is also hearsay for which no exception has been established. Fed. R. Evid. 801.  The Court should strike the testimony identified above.

### III.  THE 2012 JUDGMENT IS NOT SUBJECT TO RECOGNITION

### A.  The French Court Lacked Personal Jurisdiction over Defendants

California law requires that a foreign court's exercise of personal jurisdiction comport with California's standards. § 1716(b)(2); *see also* (Draft) Restatement (Fourth) of the Foreign Relations Law of the United States § 403(f) (2014) ("Restatement"). As stated in Defendants' Motion, the French court lacked personal jurisdiction over Defendants because they were not served with the summons and complaint, they were not given adequate notice of the proceedings, and they did not have minimum contacts with France. Plaintiffs cite *Bank of Montreal v. Kough*, 612 F.2d 467 (9th Cir. 1980) to argue that personal jurisdiction requires only minimum contacts and "reasonable notice." Opp. at 13. But in *Bank of Montreal* and the Supreme Court case it relied on, the defendants *had been personally served. Bank of Montreal*, 612 F.2d at 471; *Kulko v. Superior Court*, 436 U.S. 84, 91-92 (1978). The Supreme Court has made clear that personal jurisdiction requires a constitutionally sufficient relationship between defendant and the forum, notice to the defendant, *and* strict compliance with the procedural requirement of service of

---

[4] Mooney's testimony about Secretary of State records filed in 2014, including the assertion that Defendants' agent for service was a racehorse, is further inadmissible because statements made in *2014* are irrelevant to purported service attempts in *2011*. Fed. R. Evid. 401, 403, 1002.

summons. *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987).

      1.   <u>Defendants were not served, and de Fontbrune did not make reasonable efforts.</u>

It is undisputed that Defendants never received the summons and complaint, and Plaintiffs have presented no evidence that de Fontbrune made any attempt to locate and serve Defendants after his preliminary attempts at addresses used in prior litigation failed. Wofsy Decl. ¶ 14. It is also undisputed that Defendants received *other* French legal documents at those same addresses during the same time period,[5] and that de Fontbrune and his counsel communicated with Defendants at their storefront address and Mr. Wofsy's longtime residence, both before and after the failed service attempts. Wofsy Decl. ¶¶ 15-16. Plaintiffs cite to inadmissible arguments and conclusory statements in Serre's declaration that Defendants were "properly served" (but also "refused" service) by mail. Opp. at 4-5; see Section II(B), *supra*. Mr. Wofsy's testimony that he was unaware of de Fontbrune's service attempts, and that he did not refuse to collect his mail is both logical and unrefuted. Wofsy Decl. ¶¶ 21-22. Furthermore, although Plaintiffs state that the French court issuing the 2012 Judgment "concluded that the service efforts were sufficient," the 2012 Judgment reflects no such analysis under French law or California law. Compl. Ex. 6. Rather, the Court simply stated that de Fontbrune "produced . . . the requested certification," i.e., the "affidavits of non-service" which state only that service was attempted and failed. *Id.*; Popovic Decl. Exs. 4-5.

While it may be that reasonable efforts to provide notice, even if unsuccessful, can satisfy due process, a "reasonable effort" requires an attempt to locate a defendant if service at a last-known address fails. California's Judicial Council has addressed the diligence required to locate a defendant for service before concluding that the person cannot be found:

> "[R]easonable diligence" . . . denotes a thorough, systematic investigation and inquiry conducted in good faith by the party or his agent or attorney (citations). A number of honest attempts to learn defendant's whereabouts or his address by inquiry of relatives, friends, and acquaintances, or of his employer, and by investigation of appropriate city and telephone directories, the voters' register, and the real personal property index in the assessor's office, near the defendant's last known location, are generally sufficient.

---

[5] Even now, the U.S. Postal Service confirms 401 China Basin Street as a valid address. Wofsy Decl. ¶¶ 23-24 & 26, Exs. 13 & 15; Request for Judicial Notice, Ex. 1; Declaration of Alan Wofsy in Support of Opposition to Cross-Motion for Summary Judgment, Ex. 1.

§ 415.50, Judicial Council Comment; *see also Donel, Inc. v. Badalian*, 87 Cal. App. 3d 327, 332-33 (1978) ("The question is simply whether [plaintiff] took those steps which a reasonable person who truly desired to give notice would have taken under the circumstances."); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) ("[P]rocess which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.").

Courts examining service under the Hague Convention have reached the same conclusion. In *Swift v. Pandey*, 2016 WL 1117950, at *3 (D.N.J. Mar. 22, 2016), where the foreign central authority was unable to locate the defendant at the addresses provided by the plaintiff (a last-known address and a government-registered address), the court found that absent additional efforts to locate the defendant, the service requirement had not been met, and default judgment was inappropriate. *Cf.* also *Backjoy Orthotics, LLC v. Forvic Int'l Inc.*, 2016 WL 7664290 (M.D. Fla. Mar. 7, 2016) (finding that multiple attempts at addresses culled from multiple sources, including addresses of related businesses, and hiring a private investigator, satisfied requirement of reasonable efforts to serve under Hague Convention).[6]

De Fontbrune's failure to make reasonable efforts to serve Defendants cannot be excused. Not only did his counsel communicate regularly with Defendants at both the 401 China Basin and 1109 Geary addresses (both of which are still valid addresses in 2018) over a course of years, after obtaining a default judgment without serving Defendants, de Fontbrune succeeded in serving Defendants in the instant action to enforce the prior judgment. *See Donel*, 87 Cal. App. 3d at 333 ("It is significant to us that after obtaining judgment, [plaintiff] was apparently successful in locating [defendant] by simply examining the fictitious name file in the office of the county clerk . . . .").

---

[6] *AO Alfa-Bank v. Yakolev*, 21 Cal. App. 5th 189 (2018), cited by Plaintiffs, is inapposite. In that case, involving a judgment from a Russian court, the Russian defendant had a registered residence in Russia, and the defendant had *contractually agreed* to receive notice concerning the subject debt at that address, *and* to notify the plaintiff if the address changed; he also had a legal obligation to notify the Russian government of a change of address. *Id.* at 195-96, 201-202, 209. Defendants here had *no* contractual obligation to de Fontbrune, nor any legal obligation to the French courts to keep them apprised of the best address for service.

2.  <u>Defendants did not receive adequate notice of the proceedings in time to defend.</u>

It is undisputed that Defendants first received information about the French proceedings, in French, in November 2011, after the hearing; and that the notification contained no information about how Defendants could appear or defend themselves in the proceedings. Rather, it stated that the proceedings had been re-opened for one reason: to allow de Fontbrune to provide proof of service. Plaintiffs argue that this was adequate notice because Mr. Wofsy testified that his French is "not too bad," and that he can "reasonably read French." Opp. at 4, Mooney Decl. Ex. C. There is no evidence that Mr. Wofsy understood French legal terminology, but even if he understood French perfectly, there is nothing in the November 2011 *Notification D'Une Decision* or the accompanying *Jugement* that even hints that Defendants could still have intervened in the proceedings at that time. Opp. at 18-19; *see* Wofsy Decl., Exs. 10 & 11.  The *Notification* includes a deadline for appeal, and states that "the appeal itself have [sic] no suspensive effect."  Wofsy Decl., Ex. 11.  The *Jugement* provides that the proceedings are to be reopened "for the production by Mr. Yves Sicre de Fontbrune of the certificate from the foreign authority responsible for notification of the document instituting the proceedings dated July 22, 2011, in accordance with" the Hague Service Convention.  *Id.*

Plaintiffs charge Mr. Wofsy with knowledge of French legal terminology and unstated French civil procedure because he participated in an earlier French lawsuit, in which he was represented by French counsel. Surely participation as a represented party in one lawsuit does not enable a layperson to understand the unstated legal significance of a foreign legal document. Rather, notice must be in English and must provide instructions for how to respond, the deadline to respond, and the consequences for failing to respond. *Julen v. Larsen*, 25 Cal. App. 3d 325, 328 (1972).

Plaintiffs cite Hague Convention article 5, which provides that each State's Central Authority may decide whether to require documents to be translated, and to the U.S. Central Authority's statements that it will deliver documents solely in French. Opp. at 4, fn. 4. However, Plaintiffs omitted critical language from the Central Authority that immediately follows the excerpt they cite: "Some courts may rule, however . . . that service of documents not translated

1   into English and made through these informal mechanisms may not provide the recipient with

2   sufficient notice of the nature of the proceeding and an opportunity to respond, and, therefore, not

3   be enforceable as a matter of due process."

4   https://www.hcch.net/en/states/authorities/details3/?aid=279. That is the case in California, and

5   the post hoc "notice" received by Defendants in the form of the November 2011 decision was

6   inadequate as a matter of California law.[7]

7          3.       Defendants did not have minimum contacts with France.

8          It is undisputed that Defendants are domiciled in the United States, never had any assets in

9   France, and have not published any books that could have been sold in France since 1998 at the

10  latest. Wofsy Decl. ¶¶ 11, 13. Plaintiffs argue that it was "fair" to require Defendants to defend

11  themselves in France against claims related to distribution of works in France containing

12  intellectual property "stolen from a French plaintiff."[8] Opp. at 13. However, as stated in

13  Defendants' Motion and undisputed in the Opposition, the French court that issued the 2012

14  Judgment did not establish how the books seized in Paris in 2011 came to be in France, much less

15  that Defendants were responsible. That de Fontbrune, the past owner of the copyrights, lived in

16  France and found copies of the *Picasso Project* in France does not change the analysis. *See Lang*

17  *v. Morris*, 823 F. Supp. 2d 966, 970, 974 (N.D. Cal. 2011) (knowledge that copyright owner lives

18  in given forum does not establish "purposeful direction" by foreign defendant absent intentional

19  targeting of plaintiff in forum).

20         4.       Defendants have not waived objection to personal jurisdiction.

21         Plaintiffs argue that by defending themselves in the 1996 lawsuit (which ended in 2002),

22  Defendants waived all future objection to the jurisdiction of the French courts. Opp. at 11.

23  Plaintiffs cite two domestic cases, *Goldman v. Simpson*, 160 Cal. App. 4th 255, 263 (2008), and

24  *Cadle Co. II, Inc. v. Fiscus*, 163 Cal. App. 4th 1232, 1237 (2008) for the proposition that personal

25  _____

26  [7] Plaintiffs say Defendants did not appear because Mr. Wofsy "simply considered himself above French law and 'd[id] not accept French jurisdiction in this matter'" (Opp. at 19), but Plaintiffs quote from Mr. Wofsy's response to a summons he received *in a different lawsuit*.

27  [8] In fact, in 1991 the Succession Picasso granted Defendants the right to reproduce all works by

28  Picasso, including those reproduced in the Zervos catalogues. The Succession notified de Fontbrune of this right in 1991. Wofsy Decl. ¶ 6, Ex. 2.

jurisdiction over a defendant extends to future lawsuits to enforce an original judgment. However, as Plaintiffs admit, the judge in the first French proceedings specifically did *not* retain jurisdiction over enforcement. Serre Decl. ¶ 17. Furthermore, unlike *Goldman* and *Cadle,* the 2012 Judgment was not merely to enforce an unpaid judgment. Rather, it was a new claim before a different court based on *new facts* arising after issuance of the prior judgment, including whether books allegedly found in France in 2011 were put there by Defendants. If Defendants were not responsible for the presence of those books in France, they did not violate the injunction and they would not be liable. Voluntarily defending the 1996 lawsuit does not signify consent to the foreign court's jurisdiction in the separate enforcement case. See Mot. at 13.

Plaintiffs also argue that Defendants waived all objection to the lack of personal jurisdiction by filing the revision action (a separate proceeding with no analogue in American law). This is illogical, and the cases relied on by Plaintiffs are based on New York law and distinguishable in any event.[9] In *S.C. Chimexim S.A. v. Velcro Enterprises, Ltd.*, 36 F. Supp. 2d 206 (S.D.N.Y. 1999) defendants had a place of business in the foreign forum, and the case arose out of business conducted in that forum. In *Akande v. Transamerica Airlines, Inc.*, 2007 Del. Ch. LEXIS 68 (Del. Ch. Feb. 2, 2007), defendant also had a place of business in the foreign forum, conducted business there, and the case arose out of contracts signed there. In *CIBC Mellon Trust Co. v. Mora Hotel Corp. N.V.*, 792 N.E. 2d 155 (N.Y. 2003) the defendants were duly served and appeared in the foreign proceedings to contest jurisdiction before later appealing on the merits. And in *Chevron Corp. v. Donzinger*, 886 F. Supp. 2d 235, 280 (S.D.N.Y. 2012) the defendant had been duly served, appeared, and defended himself fully in the original proceedings through trial.

**B.     The French Court Lacked Subject Matter Jurisdiction**

As explained in the Motion, the French court that issued the 2012 Judgment lacked subject matter jurisdiction as a matter of French law because de Fontbrune had transferred away his right to liquidate the *astreinte* and therefore lacked standing. Mot. at 14. Plaintiffs essentially ignore the relationship between lack of standing and subject matter jurisdiction, arguing instead that this

---

[9] Notably, unlike California, New York "had traditionally been a generous forum in which to enforce judgments for money damages rendered by foreign courts . . ." *CIBC Mellon Trust Co.*, 792 N.E. 2d at 159.

1   Court should not relitigate the French action on the merits. Opp. at 15-16. Defendants do not seek

2   to relitigate the merits, but rather to assess whether the French court had subject matter jurisdiction

3   to decide the merits in the first instance. The UFCMJRA provides that a court in California "shall

4   not recognize a foreign-country judgment if . . . [¶] [t]he foreign court did not have jurisdiction

5   over the subject matter." § 1716(b)(2). Whether plaintiff had standing does not go to the merits; it

6   goes to subject matter jurisdiction. *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1172 (9th Cir. 2013)

7   (absent standing, federal court lacks subject matter jurisdiction).

8           Plaintiffs argue that subject matter jurisdiction must be decided under the law of the

9   foreign jurisdiction. Opp. at 17. Defendants have submitted evidence of foreign law demonstrating

10  that in France, as in the United States, a plaintiff must have an interest in the outcome of the case,

11  and that if the plaintiff does not have standing, the case must be dismissed prior to consideration

12  of the merits. *See* Mot. at 14; le Guillou Decl. ¶ 5. Plaintiffs further argue that the French court

13  necessarily had subject matter jurisdiction because "the enforcement division of the French Trial

14  Court" has jurisdiction over enforcement issues. Opp. at 16. But regardless of whether a court has

15  authority to decide certain types of cases, the plaintiff must have standing for the court to consider

16  the merits of a particular dispute. Le Guillou Decl. ¶ 5. In this case, de Fontbrune did not own the

17  right he sought to enforce, which means that irrespective of the merits, he lacked standing to sue,

18  and the French court therefore lacked subject matter jurisdiction. See Mot. at 14-15.

19          Plaintiffs contend that although de Fontbrune transferred away the copyrights in 2001, he

20  retained the right to liquidate the *astreinte*. Opp. at 17. Relying on an *unpublished Cour de*

21  *Cassation* case from 2012, Plaintiffs erroneously assert that no *astreinte* is transferred unless

22  specifically transferred by agreement. First, the case does not compel such a conclusion,

23  particularly with respect to *astreinte* based on intellectual property rights; and second, de

24  Fontbrune *did* explicitly transfer his rights in the *astreinte* to Editions Cahiers d'Art. In addition,

25  the unpublished 2012 case cited by Plaintiffs is entitled to less weight than the *published* case

26  from 2011 upon which Defendants rely. *See*

27  https://www.courdecassation.fr/jurisprudence_2/p._b._22450.html (explaining relative importance

28  of published and unpublished cases). The 2011 case stands for the proposition that the right to

1  liquidate *astreinte* for a period after the transfer of the underlying right belongs to the transferee.

2  Declaration of Pierre Sirinelli ¶ 20 (citing Cass. Civ. 2, July 7, 2011, No. 10-20296).

3        The *Cour de Cassation*'s decision not to publish the 2012 case cited by Plaintiffs indicates

4  it was limited to its facts and was not intended to overrule the 2011 decision. Reply Declaration of

5  Pierre Sirinelli, pp. 2-4. The unpublished case also is distinguishable on its facts, because the

6  underlying judgment related to commercial exploitation, and the transfer was confined to the

7  goodwill of the company. In France, there is no automatic transfer of debts and receivables arising

8  from commercial exploitation in a transfer of goodwill alone. *Id.* at pp. 4-7. By contrast, an

9  intellectual property right is an intangible right *in rem*, and the *Cour de Cassation* has confirmed

10 that the transferor of a right *in rem* only has standing to liquidate an *astreinte* for acts that occurred

11 prior to the transfer of the right. *Id.* at 12 (citing Cass. Civ 2., December 6, 2012 , No. 11-21.517;

12 and Roger Perrot, *Astreinte: qualité d'un cédant à demander la liquidation* RTD Civ 2013 page

13 176). Furthermore, the goodwill transfer agreement in the 2012 case stated specifically that the

14 plaintiff would retain standing to pursue the then-pending lawsuit and would retain any benefit

15 from that lawsuit, including, explicitly, the right to enforce any *astreinte* awarded. Thus, as a

16 matter of *contract law*, the plaintiff retained standing in those circumstances. *Id*. at p. 5.

17       There is no such contractual agreement in this case. Indeed, the evidence is undisputed that

18 the rights in the 2001 Judgment (including the *astreinte*) were transferred to Editions Cahiers

19 d'Art, not only as a matter of law but also by contract. While the copies of the transfer agreements

20 produced by Plaintiffs in the instant case are missing their attachments (which apparently listed

21 the items subject to transfer), de Fontbrune admitted in his confiscation request to a French court

22 that he *had* transferred the rights in the 2001 Judgment to Editions Cahiers d'Art in addition to the

23 copyrights. Popovic Decl. Ex. 15. He later asserted that he still possessed some unspecified

24 "residual rights," but neither de Fontbrune nor Plaintiffs have ever provided any legal support for

25 that assertion, nor even an explanation. *Id.* Regardless, the French court that issued the 2013

26 judgment in case no. 11/13911 rejected that very argument. In the complaint in that case (brought

27 jointly with Editions Cahiers d'Art), de Fontbrune also claimed he had both transferred the rights

28 *and* retained some undefined "residual" right. Wofsy Decl. Ex. 14. The court found that the rights

1  had been transferred and that de Fontbrune lacked standing to pursue the infringement claims.

2  Compl. Ex. 16. The right to liquidate the *astreinte* was transferred—both because it followed the

3  right it was intended to protect, and as a matter of contract. As a consequence, de Fontbrune

4  lacked standing to enforce the 2012 Judgment.

5  **C.       The 2012 Judgment Was Obtained by Fraud**

6          De Fontbrune did not own the copyrights underlying the *astreinte*, or any interest in the

7  2001 judgment, at the time he initiated a new case to enforce the *astreinte* in 2011, yet he brazenly

8  represented in the enforcement complaint that he *still held* those rights. Popovic Decl. Ex. 3.

9  Because of that misrepresentation, compounded by de Fontbrune's failure to serve Defendants, the

10 French enforcement court had no reason to question de Fontbrune's standing. De Fontbrune's

11 conduct constitutes extrinsic fraud, because neither Defendants nor the Court had any opportunity

12 to "raise[] and deal[] with it in the rendering court." Opp. at 19-20 (quoting Uniform Act § 4, p.

13 11, Cmt. 7, discussing "intrinsic fraud"). *Iraq Middle Market Dev. Foundation v. Harmoosh*, 175

14 F. Supp. 3d 567, 577 (D. Md. 2016), cited by Plaintiffs, concerned a plaintiff's concealment of

15 facts from the foreign court that were *known* to the defendants, who also participated in the foreign

16 proceedings. In those circumstances, defendants had adequate opportunities to raise and deal with

17 the fraud in the rendering court.

18         The instant case is more like the extrinsic fraud in *Pentz v. Kuppinger*, 31 Cal. App. 3d

19 590, 595-97 (1973), where plaintiff concealed from both the court and defendant, payments

20 received from a third party that should have been credited against the amount owing by defendant.

21 The court in *Harmoosh* also recognized that extrinsic fraud "goes to the question of jurisdiction."

22 175 F. Supp. 3d at 577. In the instant case, de Fontbrune obtained a default judgment against

23 Defendants after making insufficient effort to serve them, based on a fraudulent misrepresentation

24 to the French court that neither the court nor Defendants could reasonably have identified. Such

25 extrinsic fraud warrants non-recognition of the judgment.

26 **D.       The 2012 Judgment is Repugnant to U.S. Public Policy**

27         As stated in Defendants' Motion, the Court should deny recognition of the 2012 Judgment

28 because the judgment is based on a claim that is repugnant to California and U.S. public policies

in favor of free speech and progress of the arts. Mot. at 16-22. The judgment penalizes the use of non-original, documentary photographs with no regard to the fair use protections required in the U.S. to preserve First Amendment rights. *See SARL Louis Feraud Int'l v. Viewfinder, Inc.*, 489 F.3d 474, 481-83 (2d. Cir. 2007) (whether judgment for copyright infringement is repugnant to U.S. public policy in favor of free speech requires comparison of U.S. and French fair use laws).

*Ohno v. Yasuma*, 723 F.3d 984 (9th Cir. 2013), cited by Plaintiffs, provides additional support for this defense. In *Ohno*, defendant church argued that a general tort judgment issued in Japan in favor of a plaintiff who claimed she had been manipulated into turning over her life savings to the church was repugnant to the Free Exercise clause of the First Amendment. *Id.* at 1001. The Ninth Circuit disagreed, noting that defendant's objection arose from application of an otherwise neutral law (general tort law) to the specific speech of defendant (in this case a church), and distinguished that situation from cases concerning "foreign laws specific to speech or expression—such as libel, defamation and hate speech laws . . ." *Id.* at 1004.[10] The Ninth Circuit observed that repugnancy inheres where there are "fundamental differences in the guiding legal doctrine applied or the procedures used in the foreign-country court as compared to domestic legal principles" *Id.* Defendants have demonstrated that the French copyright scheme's absence of fair use protections and the granting of monopolies over unoriginal expression render it incompatible with the First Amendment.

**E.    The 2012 Judgment Conflicts With Another Final and Conclusive Judgment**

The 2012 Judgment conflicts with the 2013 judgment in case 11/13911. Compl. Ex. 16. The 2013 judgment established that de Fontbrune had no interest in the copyrights since December 2001. The 2012 Judgment, based on de Fontbrune's false representation to the court that he retained those same rights, cannot coexist with the later judgment.

**F.    The 2012 Judgment Was Rendered in Circumstances That Raise Substantial Doubt about the Integrity of the Underlying Proceedings**

Plaintiffs' insistence that section 1716(c)(7) applies only to cases involving "corruption"

---

[10] Plaintiffs assert that the UFCMJRA's carve-out for defamation judgments precludes non-recognition of other judgments based on the First Amendment. Opp. at 21. *Ohno*'s list of other speech-related laws (including copyright laws) demonstrates otherwise.

relies exclusively on non-California authorities. Neither the UFCMJRA nor any California case imposes such a standard. More to the point, the circumstances in this case do raise substantial doubt about the integrity of the proceedings that led to the 2012 Judgment. The record does not show any consideration by the French court of minimum contacts between Defendants and France. Nor is there evidence that de Fontbrune made any effort to locate and serve Defendants aside from limited attempts at two addresses used in prior proceedings, where Defendants were successfully served around the same time Plaintiffs claim service was not possible. The record is similarly bereft of evidence that the French court evaluated the service efforts by de Fontbrune prior to prematurely declaring Defendants in default, contrary to French procedural rules.

The 2012 Judgment reflects de Fontbrune's uncontested tally of the number of images he found in the books, and the actual amount awarded was simply the two million euros de Fontbrune requested based on finding copies of the *Picasso Project* at one bookstore in Paris. Most egregiously, the judgment resulted from a fraud upon the court, i.e., de Fontbrune's misrepresentation that he owned the copyrights underlying the *astreinte*, compounded by the failure of service, virtually assuring the fraud would not be revealed. These circumstances raise substantial doubt about the integrity of the proceedings.

**G.     The Proceedings Leading to the 2012 Judgment Were Not Compatible With the Requirements of Due Process**

Without question, foreign proceedings predicated on fraud, in which (unbeknownst to the foreign court) plaintiff lacked standing, Defendants were not served and did not receive adequate notice in time to defend, do not comport with due process. As explained in *Julen v. Larson*, to satisfy requirements of due process, notice of a proceeding must be in English and indicate the "location of the pending action, the amount involved, the date defendant is required to respond, and the possible consequences of his failure to respond" 25 Cal. App. 3d at 328. It is undisputed that Defendants did not receive notice that satisfied these requirements.

## IV.     CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion for Summary Judgment, and deny Plaintiffs' Cross-Motion.

Dated:  July 30, 2018

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By _____/s/ Neil A.F. Popović_____
                              NEIL A.F. POPOVIĆ

Attorneys for Defendants
ALAN WOFSY and
ALAN WOFSY & ASSOCIATES

Case No. C 13-05957 EJD-NC
DEFENDANTS' REPLY ISO SUMMARY JUDGMENT & OPP. TO CROSS-MOTION