UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

Vincent Sicre de Fontbrune; Loan Sicre de Fontbrune; Adel Sicre de Fontbrune; Anais Sicre de Fontbrune, in their capacity as the personal representatives of the Estate of Yves Sicre de Fontbrune,

       Plaintiffs,

    v.

Alan Wofsy, an individual; Alan Wofsy & Associates; Does 1 through 100, inclusive,

       Defendants.

Case No.  5:13-cv-05957-EJD

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING IN PART AND GRANTING IN PART PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 61, 63

This case arises from French litigation over copyrights of photographs of the works of Pablo Picasso. Yves Sicre de Fontbrune first sued Alan Wofsy and Alan Wofsy & Associates ("Defendants") in France in the late 1990s for publishing volumes of a book, *The Picasso Project*, that reproduced copyright-protected photographs of Picasso's works. In 2001, de Fontbrune prevailed on the appeal of that suit, and the French court issued a French legal device, called an *astreinte*, that would subject Defendants to damages for any further acts of infringement. About ten years later, de Fontbrune discovered copies of *The Picasso Project* in a French bookstore and initiated legal proceedings in France to liquidate the *astreinte*. Defendants did not appear in the proceeding and contend that they were not properly served. In early 2012, the enforcement division of the French trial court, the *Juge de l'Exécution près le Tribunal de Grand Instance de Paris* (the "JEX") granted an award of €2 million for de Fontbrune (the "2012 Judgment").

The next year, de Fontbrune brought suit against Defendants in the Superior Court of Alameda County seeking recognition of the 2012 Judgment under California's Uniform Foreign Country Money Judgments Recognition Act (the "Recognition Act"). Defendants removed the case to federal court. The court granted Defendants' initial motion to dismiss, finding that the *astreinte* was a "fine or other penalty" under the statute and therefore not appropriate for recognition. Dkt. No. 27. De Fontbrune appealed the order, and the Ninth Circuit, finding that the *astreinte* was not a fine or other penalty, vacated the dismissal order, reversed, and remanded. Dkt. No. 33 (*de Fontbrune v. Wofsy*, 838 F.3d 992 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (Nov. 14, 2016)). While on appeal, de Fontbrune died. His wife and children filed a motion to continue as his successors in interest, which the Ninth Circuit granted. *Id.* at 9 n.3.[1] On remand, the case was reassigned to the undersigned. The parties have both moved for summary judgment. For the reasons set forth below, the court grants Defendants' motion, and grants in part and denies in part Plaintiffs' motion as to certain defenses raised by Defendants.

Federal jurisdiction arises from 28 U.S.C. § 1332(a) because Plaintiffs are citizens and residents of France and Defendants are citizens and residents of California, and the amount in controversy exceeds $75,000.

## I.    Factual Background

Beginning in 1932, Picasso's friend Christian Zervos and his company Cahiers d'Art compiled and published a series of photographs of Picasso's art in the "Zervos Catalogue." Compl. (Dkt. No. 1-1) Ex. 2 at 3. The Zervos Catalogue comprises some 16,000 photographs of Picasso's work. *Id.* Plaintiffs acquired Cahiers d'Art and the rights to the Zervos Catalogue in 1979. *Id.*; Popović Decl. Ex. 7. In 1995, Wofsy began to publish a series of works reproducing Picasso's art called *The Picasso Project*. Mot. Wofsy Decl. (Dkt. No. 61-3) ¶¶ 6-8. In 1996, after copies of two volumes of *The Picasso Project* were seized in France, Plaintiffs brought suit

---

[1] For the sake of convenience, this order refers to de Frontbrune and his heirs collectively as "Plaintiffs."

United States District Court
Northern District of California

against Defendants for copyright infringement (the "First Copyright Proceeding"). *Id.* ¶¶ 9-10;

Dkt. 70-2[2] at 1 (Fact 1).[3]  Defendants appeared in the First Copyright Proceeding. Dkt. 70-2 at 1

(Fact 2); Mot. Wofsy Ex. 7.  Defendants prevailed at the trial court in 1998; Plaintiffs then

appealed. *See* Dkt. 70-2 at 1 (Fact 3).  Defendants appeared in this appeal. Dkt. No. 70-1[4] at 9-10

(Additional Fact 2).  On September 26, 2001, the *Cour d'Appel de Paris* issued a ruling reversing

the trial court's ruling (the "2001 Judgment"). Dkt. 70-2 at 1 (Fact 3).  The 2001 Judgment found

Defendants guilty of copyright infringement, awarded relief to Plaintiffs, and prohibited

Defendants from using the at-issue photographs subject to an *astreinte* of 10,000 francs per

violation. Dkt. 70-2 at 1 (Fact 4).  The parties agree that generally an *astreinte* is transferrable.

Mot. Sirinelli Decl. (Dkt No. 61-5) ¶¶ 11-20; Cross-Mot. Serre Decl. (Dkt. No. 63-1) ¶ 18; *see*

*infra* § III.B. Defendants initiated an appeal of the 2001 Judgment to the *Cour de Cassation*, but

abandoned the appeal before it was decided. Dkt. No. 70-1 at 10 (Additional Fact 3); Wofsy Decl.

¶ 12.  In December of that year, Plaintiffs transferred away their rights to the copyrights

underlying the 2001 Judgment to the company Editions Cahiers d'Art. Dkt. 70-1 at 11-12 (Fact

26).

      About ten years later, copies of *The Picasso Project* were found in a French bookstore.

Mot. Popović Decl. Ex. 3 at 3-5.[5]  On July 22, 2011, Plaintiffs began legal proceedings in France

to, among other things, enforce the *astreinte* against Defendants (the "*Astreinte* Proceeding"). *See*

---

[2] Citations to "Dkt. No. 70-2" refer to Defendants' Response Separate Statement in Opposition to Plaintiffs' Cross Motion For Summary Judgment.  Plaintiffs did not file a reply separate statement in support of their cross motion for summary judgment. Pls. Reply (Dkt. No. 71) at 1 n.1.

[3] Defendants object to this fact as "[d]isputed as unsupported by admissible evidence. . . ." Dkt. 70-2 at 1 (Pls.' Fact 1).  Defendant Wofsy's declaration supports this fact, so it is not disputed. Mot. Wofsy Decl. ¶ 10.  Defendants purport to dispute several of Plaintiffs' facts on the grounds that Plaintiffs' cited evidence is inadmissible, while ignoring that Defendants' own evidence supports the facts in question.  To the extent that their own evidence contradicts Defendants' objections, those objections are overruled.

[4] Citations to "Dkt. No. 70-1" refer to Defendants' Reply Separate Statement in Support of Motion For Summary Judgment.

[5] All citations and quotations to the record are the English language translations of French documents.

Case No.: 5:13-cv-05957-EJD

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING IN PART AND GRANTING IN PART PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

1    *generally id* at 1-5.  These proceedings took place before the JEX.  Plaintiffs asserted that, in

2    violation of the 2001 Judgment, Defendants had continued to publish *The Picasso Project*.  *Id.* at

3    3.  The summons and complaint for the *Astreinte* Proceeding stated that the purchased copy

4    contained many hundreds of Plaintiffs' photographs, and later that the "rights to [the photographs]

5    are the property of [Plaintiffs]."  *Id.* at 3-4.  The summons and complaint also stated that the

6    proceedings were "for the settlement of the non-compliance penalty" of the 2001 Judgment.  *Id.* at

7    4.  There is no evidence that Plaintiffs ever informed the JEX that they no longer owned the

8    copyrights underlying the *astreinte*.  Dkt. 70-1 at 15 (Fact 30).

9         Defendants were not served with the summons and complaint during the pendency of the

10   *Astreinte* Proceeding.  *See* Dkt. No. 70-1 at 1 (Fact 2).  Plaintiffs contend that they attempted to

11   serve Defendants at the San Francisco address that Defendants had provided to the French court

12   during the First Copyright Proceeding, but the name of Defendants' street had been changed prior

13   to that proceeding.  Dkt. 70-2 at 1-2 (Facts 5-6); *id.* at 2 (Facts 8-10).  In October 2011, the JEX

14   held a hearing on the merits of the *Astreinte* Proceeding; Defendants were unaware of the hearing

15   and did not attend.  *Id.* at 2 (Fact 10); Dkt. No. 70-1 at 2 (Fact 7).  The next month, the JEX issued

16   a written order directing Plaintiffs to provide further evidence of service on Defendants at a

17   hearing set for December.  Dkt. No. 70-2 at 2 (Fact 11).  Defendants received the order through

18   the mail that month.  Dkt. No. 70-1 at 2 (Fact 7); Dkt. No. 70-2 at 2 at 2-3 (Fact 12).  Defendants

19   did not attend the hearing or otherwise join the *Astreinte* Proceeding.  *See* Mot. Wofsy Decl. ¶ 23.

20   On January 10, 2012, the French court granted judgment in favor of Plaintiffs (the "2012

21   Judgment") and awarded € 2 million to Plaintiffs.  Dkt. No. 70-2 at 3 (Fact 14); Mot. Mooney

22   Decl. (Dkt. No. 63-2) Ex. B.  Defendants, who never appeared in the proceeding, did not appeal.

23   *See* Dkt. No. 70-2 at 3 (Fact 17).

24        Around the same time that Plaintiffs initiated the *Astreinte* Proceeding, they filed another

25   lawsuit against Defendants and a French bookseller for infringement of the copyrights to the

26   Zervos Catalogue (the "Second Copyright Proceeding").  Dkt. No. 70-1 at 13 (Fact 28).

27   Case No.: 5:13-cv-05957-EJD
     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
28   IN PART AND GRANTING IN PART PLAINTIFFS' CROSS-MOTION FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Defendants received notice of the Second Copyright Proceeding in October 2011 but did not

2    appear in the lawsuit.  Dkt. No. 70-2 at 3-4 (Fact 18).  That French court *sua sponte* dismissed the

3    Second Copyright Proceeding in January 2013 (the "2013 Judgment").  Dkt. No. 70-1 at 15-16

4    (Fact 31).  The 2013 Judgment stated that Plaintiffs are "not permitted to bring an action of

5    infringement of copyright on the date of the summons since [they] lack[] locus standi."  Compl.

6    Ex. 16 at 4; Cross-Mot. Serre Decl. . (Dkt. No. 63-1) ¶ 11, Ex. B.

7         On February 25, 2014—after the period for a timely appeal of the 2012 Judgment and after

8    this litigation began—Defendants filed a new action in French court seeking to vacate the 2012

9    Judgment (the "Review Proceeding").  Dkt. No. 70-2 at 4 (Fact 19).  In this case, Defendants

10   challenged the 2012 Judgment arguing that Plaintiffs' 2001 transfer of intellectual property rights

11   included the transfer of their right to liquidate the *astreinte*.  Second Reply Serre Decl. (Dkt. No.

12   71-4) Ex. A at 4.[6]  The trial court dismissed the Review Proceeding on procedural grounds.

13   Cross-Mot. Serre Decl. ¶ 12; *see* Dkt. No. 70-2 at 4 (Fact 20).  Defendants appealed.  Dkt. No. 70-

14   2 at 4 (Fact 21).  In April 2018, the French appellate court affirmed the dismissal (the "2018

15   Judgment").  *Id.* (Fact 22); Second Reply Serre Decl. Ex. A at 6-7.

16   **II.    Summary Judgment Standard**

17        A party may move the court to grant summary judgment on a claim or defense—or on a

18   part of a claim or defense.  Fed. R. Civ. P. 56(a).  "A principal purpose of the summary judgment

19   procedure is to identify and dispose of factually unsupported claims."  *O'Brien as Tr. of Raymond*

20   *F. O'Brien Revocable Tr. v. XPO CNW, Inc.*, 362 F. Supp. 3d 778, 781 (N.D. Cal. 2018).

21

22   _____

23   [6] Defendants object to Serre's Second Reply Declaration—and presumably this exhibit—because
     Serre did not sign or date the declaration.  Dkt. No. 73 at 2.  The court overrules the objection for

24   the following reasons.  The declaration attests that the contents are true and correct, that Serre
     would testify to the facts contained therein, and that it was made under penalty of perjury under

25   U.S. law.  Second Reply Serre. Decl. at 1-2; *see Kersting v. United States*, 865 F. Supp. 669, 676
     (D. Haw. 1994).  Moreover, Serre filed a signed and dated version of his Second Reply

26   Declaration two weeks after Plaintiffs' filed the original unsigned version and Defendants do not
     dispute the authenticity of the exhibit.  The court finds no reason to doubt that this exhibit is a true
     and correct copy of the 2018 Judgment.

27   Case No.: 5:13-cv-05957-EJD
     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING

28   IN PART AND GRANTING IN PART PLAINTIFFS' CROSS-MOTION FOR SUMMARY
     JUDGMENT

1  "Summary judgment is appropriate when, viewing the evidence in the light most favorable to the

2  nonmoving party, there is no genuine dispute as to any material fact." *Zetwick v. Cty. of Yolo*, 850

3  F.3d 436, 440 (9th Cir. 2017).  A fact is "material" where it may affect the outcome of the case,

4  and a dispute is "genuine" where a reasonable fact finder could find for either party.  *O'Brien*, 362

5  F. Supp. 3d at 782.

6  ### III.  Application of the Recognition Act

7      Plaintiffs seek recognition of the 2012 Judgement through the Recognition Act.  Cal. Civ.

8  Proc. Code §§ 1713–1725.  In 1962, the National Conference of Commissioners on Uniform State

9  Laws promulgated the Uniform Foreign Money-Judgments Recognition Act (the "1962 Act").  *AO*

10  *Alfa-Bank v. Yakovlev*, 21 Cal. App. 5th 189, 198 (Ct. App. 2018), *as modified on denial of reh'g*

11  (Apr. 3, 2018).  California adopted the 1962 Act in 1967.  *In re Marriage of Lyustiger*, 177 Cal.

12  App. 4th 1367, 1370 (2009).  In 2005, the National Conference approved changes to the 1965 Act

13  (the "2005 Act"), and California adopted those changes in 2007 as its Recognition Act.  *Id.*

14  California made minor amendments to the 2007 version of the Recognition Act that became

15  effective on January 1, 2018.  *Alfa-Bank*, 21 Cal. App. 5th at 198-99.[7]  Most states have enacted

16  either the 1962 Act or the 2007 Act, including New York, Delaware, and Texas.[8]  Authorities

17  from outside California that apply another state's enactment of the 1962 Act or the 2005 Act have

18  persuasive value for applying the Recognition Act.  *Alfa-Bank*, 21 Cal. App. 5th at 200 (citing Cal.

19  Civ. Proc. Code. § 1722).

20      The Recognition Act employs a burden-shifting framework.  First, the party seeking to

21  enforce the foreign judgment must establish that the judgment grants a sum of money; is final,

22

23  [7] The Court of Appeal held that the 2018 amendments were not retroactive, so this order applies
   and cites to the Recognition Act as it was prior to the 2018 amendments.  *Alfa-Bank*, 21 Cal. App.

24  5th at 199.
   [8] Uniform Law Commission, *Foreign Money Judgments Recognition Act*,

25  https://www.uniformlaws.org/committees/community-home?CommunityKey=9c11b007-83b2-
   4bf2-a08e-74f642c840bc; Uniform Law Commission, *Foreign-Country Money Judgments*

26  *Recognition Act*, https://www.uniformlaws.org/committees/community-
   home?CommunityKey=ae280c30-094a-4d8f-b722-8dcd614a8f3e.

27  Case No.: 5:13-cv-05957-EJD
   ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING

28  IN PART AND GRANTING IN PART PLAINTIFFS' CROSS-MOTION FOR SUMMARY
   JUDGMENT

6

*United States District Court*
*Northern District of California*

conclusive, and enforceable under the law of the country where it was rendered; and is not a judgment for taxes, a fine or other penalty, or a judgment arising from domestic relations.  Cal. Civ. Proc. Code. § 1715; *Ohno v. Yasuma*, 723 F.3d 984, 991 (9th Cir. 2013); *Alfa-Bank*, 21 Cal. App. 5th at 199.  The Ninth Circuit has already held that the *astreinte* does not qualify as a fine or penalty.  Dkt. No. 33 at 21-30.  Plaintiffs argue that the 2012 Judgment meets the other criteria of § 1715 and Defendants do not dispute this point.  "Once the initial showing is made, there is a presumption in favor of enforcement, and the party resisting recognition bears the burden of establishing" that one of the enumerated bases for nonrecognition set forth in § 1716 applies. *Alfa-Bank*, 21 Cal. App. 5th at 199; *see also* Cal. Civ. Proc. Code. § 1716(d) ("If the party seeking recognition of a foreign-country judgment has met its burden of establishing recognition of the foreign-country judgment . . .  a party resisting recognition of a foreign-country judgment has the burden of establishing that a ground for nonrecognition stated in [§ 1716] exists.").  A court must recognize the foreign judgment unless the resisting party can carry its burden.  Cal. Civ. Proc. Code. § 1716(a).  The Recognition Act's defenses are, therefore, affirmative defenses.  *Ohno*, 723 F.3d at 991.  The Recognition Act provides three mandatory grounds for nonrecognition.  Cal. Civ. Proc. Code. § 1716(b).  Defendants argue that two apply here: (a) the JEX lacked personal jurisdiction over him, and (b) the JEX lacked subject matter jurisdiction.  *Id*. §§ 1716(b)(2), (3). The Recognition Act provides nine bases where a court "is not required to recognize a foreign-country judgment."  *Id.* § 1716(c).  Defendants argue that the following defenses under § 1716(b) bar recognition of the 2012 Judgment: (1) Defendants received insufficient notice to defend in the *Astreinte* Proceeding; (2) Plaintiffs obtained the 2012 Judgment through fraud; (3) Plaintiffs' claim underlying the 2012 Judgment is repugnant to U.S. policy; (4) the 2012 Judgment conflicts with another final and conclusive judgment—the 2013 Judgment; (5) circumstances around the 2013 Judgment raise substantial doubt as to integrity of the French court in the *Astreinte* Proceeding; and (6) the 2012 Judgment is not compatible with due process.

For Defendants to prevail, they must show that there is no dispute of material fact as to just

United States District Court
Northern District of California

1    one of the defenses.  Plaintiffs, though, must show that there are no triable issues on all of the

2    defenses for the court to grant their motion in its entirety.  But, where Plaintiffs show that no

3    triable issue exists for a particular defense, the court will grant partial summary judgment as to

4    that defense.

### a. Whether the foreign court had personal jurisdiction over the defendant (Cal. Civ. Proc. Code § 1716(b)(2))

6    Defendants' first argument is that the JEX had no personal jurisdiction because they lacked

7    minimum contacts with France, they were never properly served, they did not have adequate

8    notice and opportunity to defend the action, and they did not consent to jurisdiction.  Plaintiffs

9    counter those arguments and also argue that Defendants waived this defense by voluntarily

10   appearing in the First Copyright Proceeding and/or the Review Proceeding.  Plaintiffs base this

11   argument on § 1717(a)(2), which provides that "a foreign-country judgment shall not be refused

12   recognition for lack of personal jurisdiction if . . . [t]he defendant voluntarily appeared in the

13   proceeding, other than for the purpose of protecting property seized or threatened with seizure in

14   the proceeding or of contesting the jurisdiction of the court over the defendant."

15   The court finds that, under § 1717, Defendants' challenge to the 2012 Judgment in the

16   Review Proceeding waived any personal jurisdiction defense.  The parties do not cite any cases

17   that apply this section of the California Recognition Act, but Plaintiffs cite cases that apply New

18   York's version of the 1962 Act (the "New York Recognition Act") and Delaware's version of the

19   2007 Act.  In *S.C. Chimexim S.A. v. Velco Enterprises Ltd.*, a district court in the Southern District

20   of New York considered whether the defendant's appeal of a foreign judgment constituted a

21   voluntary appearance.  36 F. Supp. 2d 206, 215 (S.D.N.Y. 1999).  The defendant, who maintained

22   an office in the foreign nation, contended that it was not properly served in the foreign action and

23   that it did not appear in the proceeding against it.  *Id.* at 209-10.  The foreign court entered a

24   money judgment against the defendant.  *Id.* at 210.  The defendant appealed, but the foreign

25   appellate court affirmed the judgment.  *Id.*  When the plaintiff brought suit in the United States to

26   recognize the judgment, the district court found that, under the provision of the New York

United States District Court
Northern District of California

1    Recognition Act that corresponds to § 1717, the defendant had waived its personal jurisdiction

2    defense. *Id.* at 215.  The district court reasoned, "Velco contends that its appeal from the

3    Bucharest Judgment does not constitute a voluntary appearance. Velco is mistaken.  One of

4    Velco's arguments on appeal concerned the merits of the underlying dispute. . . . On this basis

5    alone, Chimexim has met its burden of proving that the Romanian courts had personal jurisdiction

6    over Velco." *Id.* at 210, 215.  In *CIBC Mellon Trust Co. v. Mora Hotel Corp. N.V.*, the New York

7    Court of Appeals held that defendants who had appealed the foreign court decision challenging the

8    merits of that decision had waived their personal jurisdiction defense in the U.S. litigation.  100

9    N.Y.2d 215, 225 (2003).  And the Delaware Court of Chancery court found that a defendant had

10   waived any personal jurisdiction defense, in part, because that defendant had challenged the

11   underlying merits on appeal.  *In re Transamerica Airlines, Inc.*, 2007 WL 1555734, at *10 (Del.

12   Ch. May 25, 2007).  Another district court in New York ruled against a defendant's summary

13   judgment motion where the defendant had, amongst other actions, "sought to have the Judgment

14   reversed or nullified on various grounds."  *Chevron Corp. v. Donziger*, 886 F. Supp. 2d 235, 280

15   (S.D.N.Y. 2012).

16          The court finds that that the reasoning of these cases is persuasive to the matter at hand.

17   Defendants protest that in those cases there were firmer grounds for finding that the foreign courts

18   had personal jurisdiction over each defendant.  But, this argument overlooks that in each case the

19   court applied the New York or Delaware statutory analog to § 1717(a)(2).  *Chevron*, 886 F. Supp.

20   2d at 280; *Velco*, 36 F. Supp. 2d at 215; *In re Transamerica Airlines, Inc.*, 2007 WL 1555734, at

21   *10; *Mora Hotel*, 100 N.Y.2d at 225.  In the Review Proceeding, Defendants went beyond merely

22   challenging the "jurisdiction of the [*Astreinte* Proceeding] court over" Defendants; they brought an

23   action to argue that Plaintiffs had transferred their rights to enforce the *astreinte* when Plaintiffs

24   sold the underlying copyrights such that the 2012 Judgment should be vacated.  Second Reply

25   Serre Decl. Ex. A at 4.  Because Defendants brought the Review Proceeding as a direct challenge

26   to the 2012 Judgment on the merits, the court is not moved by the fact that it was not a direct

27   Case No.: 5:13-cv-05957-EJD
     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
28   IN PART AND GRANTING IN PART PLAINTIFFS' CROSS-MOTION FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

1   appeal.  Defendants cannot voluntarily submit to the jurisdiction of the French courts to bring a

2   challenge on the merits of the 2012 Judgment and simultaneously complain that the French courts

3   lack jurisdiction over them.  *See Dow Chem. Co. v. Calderon*, 422 F.3d 827, 834 (9th Cir. 2005)

4   (assuming, without deciding, that the Ninth Circuit would adopt "an affirmative relief rule,

5   specifying that personal jurisdiction exists where a defendant also independently seeks affirmative

6   relief in a separate action before the same court concerning the same transaction or occurrence.

7   Such action may take place prior to the suit's institution, or at the time suit is brought, or after suit

8   has started." (citation and quotations omitted)); *cf. Mora Hotel*, 100 N.Y.2d at 225-26 ("[A]

9   defendant may be deemed to have made an appearance in an action and, therefore, to have

10  submitted to a court's jurisdiction, by, among other things, 'taking steps in the action after

11  judgment either in the trial court or in an appellate court.'" (quoting Restatement [Second] of

12  Conflict of Laws § 33, Comment b).

13      Because Defendants voluntarily initiated the Review Proceeding, the court finds that they

14  are precluded from raising personal jurisdiction as a defense.  The court grants partial summary

15  judgment in favor of Plaintiffs on this issue.  The court does not consider the parties' other

16  arguments regarding personal jurisdiction.

17      **b.  Whether the foreign court had jurisdiction over the subject matter (Cal. Civ. Proc. Code § 1716(b)(3))**

18      Defendants argue that when Plaintiffs transferred the rights to the copyrights underlying

19  the *astreinte* in 2001, they also transferred the right to liquidate the *astreinte*.  Plaintiffs, the

20  argument goes, therefore did not have the French equivalent of standing to bring the *Astreinte*

21  Proceeding and the JEX did not have the subject matter jurisdiction over the *astreinte* required to

22  enter the 2012 Judgment.  Plaintiffs make several counter arguments: First, they argue that the

23  Defendants are attempting to re-litigate ownership of the *astreinte*, which was decided in the

24  *Astreinte* Proceeding.  Next, they contend that the JEX, as a court in the enforcement division of

25  the French trial court system, possessed subject matter jurisdiction over the question of liquidating

26  the *astreinte*.  Third, they argue that they did not transfer the rights to the *astreinte* when they

27  Case No.: 5:13-cv-05957-EJD

28  ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING IN PART AND GRANTING IN PART PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    transferred the underlying copyrights.  And fourth, they argue that the Recognition Act considers

2    the subject matter jurisdiction under French law, so the entire question of their standing is

3    inappropriate.

4           Whether this court may even consider the ownership of the right to liquidate the *astreinte*

5    at the time of the *Astreinte* Proceeding is a threshold question.  Plaintiffs' argument that under the

6    Recognition Act a U.S. court should not inquire into the merits underlying the foreign judgment is

7    correct so far as it goes.  *Ohno*, 723 F.3d at 996-97.  Plaintiffs omit, however, that a U.S. court

8    should still consider whether there are grounds for nonrecognition under § 1716(b) or (c).  *Id.* (The

9    Recognition Act "requires a court to recognize a final, conclusive foreign monetary award that is

10   enforceable where rendered, without inquiry into the merits of the underlying judgment, once the

11   court determines that there is no ground for nonrecognition under § 1716(b) or (c) of the

12   [Recognition] Act." (citation omitted)); *see S.A.R.L. Louis Feraud Int'l v. Viewfinder, Inc.*, 489

13   F.3d 474, 479 (2d Cir. 2007) (refusing to "second-guess" whether the defendant's actions

14   infringed the plaintiff's intellectual property rights, but still considering defenses under § 1716).

15   Thus, the first question for this court is whether ownership of the *astreinte* goes to the subject

16   matter jurisdiction of the French court.

17          Plaintiffs assert this court should apply French law to determine whether the JEX had

18   subject matter jurisdiction over the *Astreinte* Proceeding, and Defendants do not object.

19   "[F]oreign law interpretation and determination is a question of law."  Dkt. No. 33 at 15.

20   "Independent research, plus the testimony of foreign legal experts, together with extracts of

21   foreign legal materials, has been and will likely continue to be the basic mode of determining

22   foreign law.  Importantly, such material and testimony may be considered at any time whether or

23   not submitted by a party."  *Id.* at 12 (citation and quotations omitted).  Both parties have filed

24   declarations from French legal experts to assist the court in determining French law, and the court

25   has conducted its own research on the matter.

26          Defendants' position is that under French law, a party must have an interest in the outcome

27   Case No.: 5:13-cv-05957-EJD
     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
28   IN PART AND GRANTING IN PART PLAINTIFFS' CROSS-MOTION FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

1    of a suit in order to bring the suit, or the suit will be dismissed.  Such a suit with a party lacking an

2    interest is "inadmissible" under French law.  This requirement is equivalent to standing under U.S.

3    law, so when a plaintiff lacks an interest in the outcome of the case, the court lacks subject matter

4    jurisdiction over the case.  Article 31 of the French Code of Civil Procedure states in part, "[t]he

5    right of taking legal action is available to all those who have a legitimate interest in the success or

6    dismissal of a claim."  Le Guillou Decl. (Dkt No. 61-8) Ex. 4.  And Article 32 provides, "[n]o

7    claim is admissible that is filed by or against any person who does not have the right to act."  *Id*. at

8    Ex. 6.  Article 122 provides that a party may argue that the opposing party is inadmissible

9    "without examination of the grounds" underlying the opposing party's claim, because the

10   opposing party "lack[s] . . . a right to legal action, such as . . . lack of interest."  *Id*. at Ex. 8.  And

11   Article 123 allows a party to argue that a claim is inadmissible at any stage of the proceeding.  *Id.*

12   at Ex. 10.

13           Defendants submitted a declaration from Vonnick Le Guillou in support of their position.

14   Le Guillou is a partner at DLA Piper's office in Paris and is the head of the firm's Litigation and

15   Regulatory Group in France.  *Id.* ¶ 1.  She obtained her Master's degree in Private Law from a

16   French school, has been admitted to the Paris Bar since 1984, and has extensive experience

17   litigating in French trial and appellate courts.  *Id.*  She is well qualified to offer her opinion on this

18   question.  Based on the Articles of the French Code of Civil Procedure referenced above, she

19   opines that while French law refers to standing as "inadmissibility" rather than "jurisdiction," "the

20   practical result of a lack of standing is the same," because lack of admissibility will lead to

21   dismissal without consideration of the merits at any stage of the proceeding.  *Id.* ¶ 5.

22           Plaintiffs counter that inadmissibility is a defense that a defendant may raise, but it does

23   not go to the subject matter jurisdiction of the court.  Plaintiffs offer the Second Reply Declaration

24   of Eric Serre in opposition.  Serre is a litigator practicing in France who has multiple Master's

25   degrees in law from French schools and has been admitted to the Paris bar since 1996.  Second

26   Reply Serre Decl. ¶ 1.  He is well qualified to offer opinions on this question.  He states that,

27   Case No.: 5:13-cv-05957-EJD
     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
28   IN PART AND GRANTING IN PART PLAINTIFFS' CROSS-MOTION FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

1    under French law, maintaining that an action is inadmissible is a defense, and that if a defendant

2    does not raise that defense, the plaintiff does not have the burden to prove the absence of such a

3    defense, and the court is not obligated to investigate the matter on its own.  *Id.* ¶ 2.

4          The court finds that the question of admissibility under French law is comparable to

5    standing under U.S. law, and that if an action is inadmissible, then the French court does not have

6    subject matter jurisdiction over the action for the purposes of § 1716(b)(3).  Under U.S. law, a

7    plaintiff must possess, among other requirements, "a legally protected interest" that is likely to be

8    redressed by a favorable decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992); *Maya*

9    *v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("[L]ack of Article III standing requires

10   dismissal for lack of subject matter jurisdiction.").  This requirement directly aligns with Article

11   31 of the French Code of Civil Procedure's requirement that a party have "a legitimate interest in

12   the success or dismissal of a claim."  Le Guillou Decl. Ex. 4.  And—critically—under both

13   countries' laws, where a party lacks this "interest," then courts will dismiss the action without

14   considering the merits underlying the claim.  *Compare Righthaven LLC v. Hoehn*, 716 F.3d 1166,

15   1173 (9th Cir. 2013) (affirming dismissal for lack of standing) *with* le Guillou Decl. Ex. 8

16   (allowing dismissal of inadmissible actions without consideration of the merits).  Because the

17   question of whether a matter is inadmissible may lead to dismissal without consideration of the

18   merits, the court finds that if a matter is inadmissible in French courts, then, those courts lack

19   subject matter jurisdiction under the Recognition Act.

20          The court's conclusion here has support from at least one case that considered standing

21   under French law.  In *Oveissi v. Islamic Republic of Iran*, the court, applying French law to tort

22   claims, found "standing" to be a "threshold" question that required resolution before the court

23   could consider the underlying merits.  768 F. Supp. 2d 1, 11 (D.D.C. 2010).  That court's

24   consideration of standing turned on whether the plaintiff could demonstrate that he had been

25   "directly injured" by the conduct of the defendants.  *Id.*  French law, like U.S. law, requires that

26   the plaintiff be able to bring the dispute-in-question into the court's jurisdiction.  That the French

27   Case No.: 5:13-cv-05957-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
28   IN PART AND GRANTING IN PART PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT

13

United States District Court
Northern District of California

legal system is more lenient on this requirement by neither obligating a plaintiff to affirmatively

demonstrate the claim is admissible nor requiring the court to investigate admissibility on its own

does not change this court's analysis.  *See* Second Reply Serre Decl. ¶ 2.  The court finds that

whether the JEX had subject matter jurisdiction over the *Astreinte* Proceeding turns on the

question of whether Plaintiffs owned the right to liquidate the *astreinte*.

The court briefly addresses Plaintiffs' second argument—that the JEX had subject matter

jurisdiction over the *Astreinte* Proceeding because it is a court in the enforcement division of the

French trial courts.  The court agrees that the JEX, as a court of the enforcement division, would

be the proper court to consider generally whether to liquidate an *astreinte*; and Defendants do not

appear to dispute that point.  But, the issue is whether this JEX had subject matter over this

*astreinte*.  If Plaintiffs did not possess the right to liquidate this *astreinte*, then this JEX did not

have subject matter jurisdiction to enter the 2012 Judgment.

The court now considers whether Plaintiffs transferred the right to liquidate the *astreinte*

when they transferred the Cahiers d'Art business and the underlying copyrights in 2001.  On

Defendants' behalf, Sirinelli offers a declaration that describes the purpose and use of *astreintes* in

the French legal systems.  He references several French legal texts to argue that an *astreinte*, while

transferable, attaches to the underlying right that it is intended to protect.  Mot. Sirinelli Decl.

¶¶ 12-20.  He opines, when Plaintiffs transferred the copyrights, they also transferred the right to

liquidate the *astreinte*.  *Id.* ¶ 28; *see id.* ¶¶ 21-28.  Plaintiffs counter with a declaration from Didier

Le Prado filed with their Reply.[9]  Dkt. No. 71-2.  Le Prado is a French attorney who practices

before the *Cour de Cassation* and formerly served as President of the Bar Council of Attorneys

before the Council of State and the *Cour de Cassation*.  Le Prado Decl. ¶ 1.  At the time of his

---

[9] Defendants object to Le Prado's declaration because Plaintiffs' originally filed only the French version and did not file an English translation until several days later.  The court overrules this objection because Federal Rule of Civil Procedure 44.1 provides: "In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."  The court finds Le Prado's declaration relevant to the determination of French law.

Case No.: 5:13-cv-05957-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING IN PART AND GRANTING IN PART PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

14

declaration, he was the President of the European Association of Supreme Court Bars.  *Id.*  The

court finds that he is well qualified to opine on this matter.  In his declaration, Le Prado analyzes

an unpublished 2012 case from the *Cour de Cassation*.  Le Prado Decl. ¶¶ 22-26, 37-44

(discussing *Cour de Cassation* case no. 11-10488, Feb. 14, 2012).  In that case, the *Cour de*

*Cassation* ruled that a business owner, who possessed an *astreinte* arising from a judgment related

to the business, could still liquidate the *astreinte* after selling the business because the *astreinte*

attached to the judgment.  *Id.* ¶ 39.  Le Prado opines that when intellectual property rights are

transferred as a part of the sale of a business, the original business owner retains the right to

liquidate any *astreinte* issued in connection with those rights after the sale of the business without

"the need to prove an agreement to that effect."  *Id.* ¶ 51.  Thus, the parties dispute whether, under

French law, the *astreinte* should be presumed to have transferred with Plaintiffs' transfer of the

copyrights.[10]

   However, the court need not resolve this question of French law for these motions.  The

parties agree that an *astreinte* can be transferred.  Pls.' Mot (Dkt. No. 63) at 16-17; Mot. Sirinelli

Decl. ¶ 12.  So, regardless of whether an *astreinte* should be presumed to attach to the underlying

intellectual property right or to the judgment, the question here is whether this *astreinte* was part

of the 2001 transfer.  And based on the available evidence this question is subject to a genuine

issue of material fact.  The contract for Plaintiffs' transfer of the copyrights does not expressly

address whether the *astreinte* was transferred.  *See* Mot. Popović Decl. Ex. 9.  But, a 2011

document that Plaintiffs, along with the buyer of the copyrights, filed in another French court

addressed the rights arising from the 2001 Judgment.  *Id.* at Ex. 15.  The document, though, is

ambiguous.  It first provides, "Mr. Yves SICRE de FONTBRUNE confirmed and reaffirmed, as

required, to the company EDITIONS CAHIERS D'ART, the rights that he held to the works of

---

[10] At oral argument, Defendants argued that the Ninth Circuit's decision implied that the *astreinte* attached to the copyrights, not the judgment.  However, they did not raise this argument in their briefs, so the court will not consider it.  Hr'g. Tr. at 13:12-14:14; *see Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

Case No.: 5:13-cv-05957-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
IN PART AND GRANTING IN PART PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT

United States District Court
Northern District of California

Christian ZERVOS (exhibit 3) and those that he had acquired under the Ruling of the Court of Appeals of September 2001, cited below," which would indicate that the *astreinte*, as a right acquired from the 2001 Judgment was transferred. *Id.* at 2. But, the document later states that de Frontbrune is "the holder of the residual rights which he held to the works of Christian ZERVOS under the ruling of September 26, 2001, which he owns with the Company CAHIERS D'ART," indicating that he retained at least some rights connected to the 2001 Judgment. *Id.* at 3. This document is ambiguous as to whether, following the transfer of the copyrights, de Frontbrune retained any rights arising from the 2001 Judgment. The interpretation of this document is a task for the fact finder. *See Wolf v. Superior Court*, 114 Cal. App. 4th 1343, 1359-60 (2004), *as modified on denial of reh'g* (Feb. 19, 2004). The court holds that whether Plaintiffs transferred the *astreinte* as part of the 2001 transfer of copyrights is a genuine issue of material fact essential for determining if the JEX had subject matter jurisdiction over the *Astreinte* Proceeding.

### c. Whether the defendant in the proceeding in the foreign court received notice of the proceeding in sufficient time to enable the defendant to defend (Cal. Civ. Proc. Code § 1716(c)(1))

The Recognition Act provides that a court may decline to recognize a foreign money judgment where "[t]he defendant in the proceeding in the foreign court did not receive notice of the proceeding in sufficient time to enable the defendant to defend." Cal. Civ. Proc. Code § 1716(c)(1). Plaintiffs initiated the *Astreinte* Proceeding in July 2011. *See generally* Mot. Popović Ex. 3. Plaintiffs attempted service through Hague Convention procedures, but Defendants did not receive the summons or complaint before the JEX issued the 2012 Judgment. *See* Dkt. No. 70-1 at 2 (Fact 6).[11] Plaintiffs contend that actual service did not occur because Defendants had provided an out-of-date physical address during the First Copyright Lawsuit so the process server could not find the address. Dkt. No. 70-2 at 1-2 (Facts 5, 8, 9).[12] On October 25,

---

[11] Plaintiffs argue that this fact is disputed because Defendants filed the Review Proceeding in 2014, but provide no facts indicating the Defendants received the complaint or summons to the *Astreinte* Proceeding prior to the 2012 Judgment.

[12] Defendants object that these facts are disputed because they are not supported by admissible evidence. The court overrules this objection because these facts, even if they were not in dispute,

United States District Court
Northern District of California

2011, the JEX held a hearing on the merits in the *Astreinte* Proceeding.  Dkt. No. 70-2 at 2 (Fact 10).  Defendants did not learn of the *Astreinte* Proceeding until late November 2011 when they received through the mail an order, entirely in French, from the JEX.  Dkt. No. 70-1 at 2 (Fact 7).  The order stated that another hearing concerning Plaintiffs' service on Defendants had been set for December 13, 2011.  Dkt. No. 70-2 at 2 (Fact 11).

A defense based on notice is proper only if the defendant "was not served in a manner reasonably calculated to give him actual notice of the pendency of the [foreign] proceeding." *Alfa-Bank*, 21 Cal. App. 5th at 213-14.  "Due process of law does not require actual notice, but only a method reasonably certain to accomplish that end. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."  *Id.* at 209 (citations and quotations omitted).  While, "no great amount of formality is required for effective notice," effective notice will "normally" include information "location of the pending action, the amount involved, the date defendant is required to respond, and the possible consequences of his failure to respond."  *Julen v. Larson*, 25 Cal. App. 3d 325, 328 (Ct. App. 1972).

Defendants argue that because they did not receive actual notice of the *Astreinte* Proceeding until late November 2011, it was insufficient for them to defend themselves.  Plaintiffs counter first that this case is like *Alfa-Bank*, where the Court of Appeal held that reasonable efforts to provide service can preclude this defense even in the absence of actual notice, and second that the mailing Defendants received in November 2011 was sufficient for Defendants to mount a defense.  But, this case is not like *Alfa-Bank*.  There, the Court of Appeal found that service of process, while unsuccessful, had been "[u]nder the[] circumstances . . . reasonably calculated to apprise [the defendant] of the pendency of the [foreign] action and afford him an opportunity to respond."  21 Cal. App. 5th at 209.  "Critical" to the decision of the Court of Appeal was the fact

would not be material to the court's ruling on this defense.
Case No.: 5:13-cv-05957-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING IN PART AND GRANTING IN PART PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

17

1    that the defendant was contractually bound to keep the foreign government apprised of his address

2    and he failed to do so.  *Id.* at 210.  There is no suggestion that Defendants were under similar

3    obligations here.  And it is undisputed that Defendants were publicly listed in the phone book at

4    the time and that the French court successfully sent another document to Defendants through the

5    mail.  Dkt. No. 70-1 at 2, 5 (Facts 7, 13).  Plaintiffs cannot establish that their efforts to serve

6    Defendants were, as a matter of law, sufficient to preclude a notice defense under *Alfa-Bank.*

7    Whether Plaintiffs' attempt at service was "reasonably calculated to apprise" Defendants of the

8    *Astreinte* Proceeding is a factual question and is inappropriate for summary judgment.  *Alfa-Bank*,

9    21 Cal. App. 5th at 209.  Plaintiffs' second argument—that the November 2011 mailing was

10   sufficient notice for Defendants to defend in the *Astreinte* Proceeding—is also a question of

11   material fact.

12          **d.  Whether the judgment was obtained by fraud that deprived the losing party of**
            **an adequate opportunity to present its case (Cal. Civ. Proc. Code § 1716(c)(2))**

13          The Recognition Act provides that when "[t]he [foreign] judgment was obtained by fraud

14   that deprived the losing party of an adequate opportunity to present its case," then the U.S. court

15   need not recognize the judgment.  Cal. Civ. Proc. Code § 1716(c)(2).  The comments to the 2005

16   Act state that only extrinsic fraud—that is "conduct of the prevailing party that deprived the losing

17   party of an adequate opportunity to present its case"—provides a ground for nonrecognition.  2005

18   Act Comments, § 4 comment 7 (quotations omitted).  An example of extrinsic fraud would be if a

19   plaintiff "obtained a default judgment against the defendant based on a forged confession of

20   judgment."  *Id.*  "Extrinsic fraud should be distinguished from intrinsic fraud, such as false

21   testimony of a witness or admission of a forged document into evidence during the foreign

22   proceeding;" intrinsic evidence is not a basis for nonrecognition.  *Id.*

23          Defendants' argument here turns on Plaintiffs' representation to the JEX that Plaintiffs'

24   owned the copyrights to the at-issue photographs and the right to liquidate the *astreinte*.

25   Defendants contend that Plaintiffs "deceived the French court as to [their] ownership of the

26   underlying intellectual property rights, and as a result of that deception, wrongfully obtained a

27   Case No.: 5:13-cv-05957-EJD
     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
28   IN PART AND GRANTING IN PART PLAINTIFFS' CROSS-MOTION FOR SUMMARY
     JUDGMENT
                                                    18

United States District Court
Northern District of California

1   judgment liquidating an *astreinte* to which [they] w[ere] not legally entitled.  [Plaintiffs']

2   misrepresentation regarding [their] ownership of the rights compounded [their] failure to effect

3   service, making it so neither Defendants nor the French court knew the true state of affairs."  Mot.

4   at 16.

5        Defendants present evidence that is analogous to the example provided in the Comments to

6   the 2005 Act.  Here, Plaintiffs presented information to the JEX—that they owned the copyrights

7   underlying the *astreinte*—that is contrary to a factual finding by the French court that issued the

8   2013 Judgment.  That information contributed to Plaintiffs obtaining a default judgment against

9   Defendants in the 2012 Judgment.  Moreover, as discussed above, whether Plaintiffs transferred

10  the *astreinte* is a disputed fact that goes to whether the JEX had jurisdiction, and "[e]xtrinsic

11  fraud . . . goes to the question of jurisdiction."  *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 175 F.

12  Supp. 3d 567, 577 (D. Md. 2016) (citation and quotation omitted), *vacated on other grounds*, 848

13  F.3d 235 (4th Cir. 2017).  If Plaintiffs did not own the right to liquidate the *astreinte* and if they

14  intentionally misled the JEX as to that fact, then those facts could constitute extrinsic fraud.  *See*

15  *Pentz v. Kuppinger*, 31 Cal. App. 3d 590, 597 (Ct. App. 1973).  Accordingly, there are genuine

16  disputes of material fact that preclude summary judgment on this defense.

17        **e.  Whether the judgment or the cause of action or claim for relief on which the**
            **judgment is based is repugnant to the public policy of this state or of the**
18          **United States (Cal. Civ. Proc. Code § 1716(c)(3))**

19        The Recognition Act provides that a court is not required to recognize a foreign judgment

20  when "[t]he judgment or the cause of action or claim for relief on which the judgment is based is

21  repugnant to the public policy of this state or of the United States." Cal. Civ. Proc. Code

22  § 1716(c)(3).  Defendants argue that this court should decline to recognize the 2012 Judgment

23  because it is repugnant to U.S. public policy favoring (1) free speech and (2) promotion of the arts.

24  Plaintiffs contend that any differences between U.S. and French law do not meet the stringent

25  standard for repugnancy.

26        "California courts have set a high bar for repugnancy under the [Recognition] Act.  The

27  Case No.: 5:13-cv-05957-EJD
    ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
28  IN PART AND GRANTING IN PART PLAINTIFFS' CROSS-MOTION FOR SUMMARY
    JUDGMENT

United States District Court
Northern District of California

standard . . . measures not simply whether the foreign judgment or cause of action is contrary to

our public policy, but whether either is so offensive to our public policy as to be prejudicial to

recognized standards of morality and to the general interests of the citizens." *Ohno*, 723 F.3d at

1002 (citations and quotations omitted). "[T]he public policy exception codified at § 1716(c)(3)

does not apply unless a foreign-country judgment or the law on which it is based is so antagonistic

to California or federal public policy interests as to preclude the extension of comity." *Id.*

(citation, quotations, and alteration omitted). In *Ohno*, the Ninth Circuit recognized that "courts in

other jurisdictions have declined to enforce foreign-country money judgments on grounds of

repugnance to the public policy embodied in the First Amendment, but only where there were

stark differences between foreign and domestic law." *Id.* at 1003. The Ninth Circuit explained

that "[s]uch direct conflict is more apt to arise where the foreign-country judgment—or the law

underlying it—does not incidentally or indirectly affect conduct that may be protected in the

United States, but expressly targets such conduct." *Id.* So, judgments based on "foreign laws

specific to speech or expression—such as libel, defamation and hate speech laws—not laws of

general application" are more likely to be found repugnant. *Id.* On this basis, the Ninth Circuit

distinguished *Ohno*—which dealt with Japanese tort laws—from the Second Circuit's decision in

*Viewfinder*. *Id.* at 1004 n. 23. In *Viewfinder*, after the district court for the Southern District of

New York found a French copyright judgment to be repugnant to public policy under the New

York Recognition Act because it conflicted with U.S. and New York policy protecting free

expression, the Second Circuit vacated and remanded with instructions to conduct a more

thorough analysis of French and U.S. copyright laws and the fair use exception for activity

protected by the First Amendment. *See Viewfinder*, 489 F.3d at 478-84.

Plaintiffs argue that Defendants' reliance on *Viewfinder* is misplaced because *Viewfinder* is

a Second Circuit case applying the New York Recognition Act, and this court should instead find

that the 2012 Judgment does not meet the high standard for repugnancy articulated in *Ohno*. This

argument fails to persuade. First, as discussed above, the Recognition Act provides that courts,

Case No.: 5:13-cv-05957-EJD

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
IN PART AND GRANTING IN PART PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT

United States District Court
Northern District of California

1   "[i]n applying and construing this uniform act, consideration shall be given to the need to promote

2   uniformity of the law with respect to its subject matter among states that enact it."  Cal. Civ. Proc.

3   Code § 1722, *see also Alfa-Bank*, 21 Cal. App. 5th at 199.  The New York Act is based on the

4   1965 Act, so cases interpreting it, like *Viewfinder*, are persuasive even if they are not binding.

5   Second, *Ohno* specifically distinguished *Viewfinder*, so the two decisions are not in conflict.

6   Accordingly, while Plaintiffs are correct that the standard for repugnancy is a difficult one to meet,

7   "[f]oreign judgments that impinge on First Amendment rights will be found to be repugnant to

8   public policy."  *Viewfinder*, 489 F.3d at 480 (quotations omitted); *see also Ohno*, 723 F.3d at 1004

9   ("[Foreign] judgments presenting a direct and definite conflict with fundamental American

10   constitutional principles will be denied recognition because repugnant.").

11          The 2012 Judgment arises, through the 2001 Judgment, from French copyright law.

12   Defendants contend that it is repugnant to public policy set forth in the U.S. Constitution because

13   (1) it conflicts with the fair use doctrine, which is rooted in the First Amendment, and (2) it

14   conflicts with policy favoring the promotion of the arts as articulated in the Intellectual Property

15   Clause.  U.S. Const. Art. I, § 8, cl. 8.  In *Viewfinder*, the Second Circuit articulated a framework

16   for applying the Recognition Act to this sort of circumstance: First, a court should identify the

17   constitutional protections for the unauthorized use of the intellectual property at issue, and second,

18   it should determine whether French intellectual property laws provide comparable protections.

19   *Viewfinder*, 489 F.3d at 481-82 (citing *Bachchan*, 585 N.Y.S.2d at 663-65; *Abdullah v. Sheridan

20   Square Press, Inc.*, 1994 WL 419847, at *1 (S.D.N.Y. May 4, 1994)).

21                              **i.   Fair Use**

22          The court first considers Defendants' fair use argument.  It is well accepted that the fair use

23   doctrine implicates the First Amendment.  *Viewfinder*, 489 F.3d at 482 ("[A]bsent extraordinary

24   circumstances, the fair use doctrine encompasses all claims of [F]irst [A]mendment in the

25   copyright field.") (citations and quotations omitted); *L.A. News Serv. v. Tullo*, 973 F.2d 791, 795

26   (9th Cir. 1992) ("First Amendment concerns are . . . addressed in the copyright field through the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
IN PART AND GRANTING IN PART PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT

United States District Court
Northern District of California

1    'fair use' doctrine."). "Because the fair use doctrine balances the competing interests of the

2    copyright laws and the First Amendment, some analysis of that doctrine is generally needed before

3    a court can conclude that a foreign copyright judgment is repugnant to public policy." *Viewfinder*,

4    489 F.3d at 482. If Defendants' use of the copyright protected photographs would not be

5    protected by the fair use doctrine under U.S. law, then the 2012 Judgment liquidating the *astreinte*

6    arising from Defendants' infringing use of the photographs would not be repugnant. *See id.* at

7    483. The court must therefore determine whether Defendants' use of the photographs constitutes

8    fair use. *See id.*

9         The Copyright Act allows for the fair use of copyright-protected works for criticism,

10   commentary, news reporting, scholarship, research and other such purposes. 17 U.S.C. § 107. In

11   assessing whether conduct constitutes fair use, courts should consider four factors: "(1) the

12   purpose and character of the use, including whether such use is of a commercial nature or is for

13   nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and

14   substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect

15   of the use upon the potential market for or value of the copyrighted work." *Id.*

16        As to the first factor, Defendants contend that the purpose and character of their use of the

17   photographs should qualify as fair use. While conceding that *The Picasso Project* is a commercial

18   venture, Defendants point out that their books are reference works intended for libraries, academic

19   institutions, art collectors and auction houses, and such institutions find it an attractive reference

20   due to its price point. Dkt. No. 70-1 at 16, 19 (Facts 33, 42). *The Picasso Project* also includes

21   information about the photographed works, such as their titles, literary references, provenance,

22   current ownership and sales information, that is generally not included in the Zervos Catalogue.

23   Dkt. No. 70-1 at 18 (Fact 39). Plaintiffs do not contest these facts. *Id.* Rather, Plaintiffs argue

24   that Defendants' copying has a commercial purpose, which weighs against fair use. However, the

25   mere commercial nature of a work does not create a presumption against fair use; such a

26   presumption "would swallow nearly all of the illustrative uses listed in the preamble paragraph of

27   Case No.: 5:13-cv-05957-EJD
     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
28   IN PART AND GRANTING IN PART PLAINTIFFS' CROSS-MOTION FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

1    § 107, including news reporting, comment, criticism, teaching, scholarship, and research, since

2    these activities are generally conducted for profit in this country." *Campbell v. Acuff-Rose Music,*

3    *Inc*., 510 U.S. 569, 584 (1994) (citation and quotations omitted).  Because Plaintiffs do not dispute

4    that *The Picasso Project* is intended for libraries, academic institutions, art collectors, and auction

5    houses, it falls within the exemplary uses named in the preamble of § 107 of the Copyright Act.

6    This factor weighs strongly in favor of fair use.

7            Defendants next argue that the nature of the Zervos Catalogue weighs in favor of finding

8    fair use because the photographs are unoriginal and documentary in nature.  However, as Plaintiffs

9    point out, in the 2001 Judgment the *Cour d'Appel* found the photographs to be creative works:

10   "the photograph of his work seeks to find its quintessence through the deliberate choice of

11   lighting, the lens, filters, framing or angle of view, it has expressed in the representation that it has

12   made of it, its own personality, highlighting an aspect that should be brought out in one place, or a

13   contrast or effect coming from the support in another . . . [and thus] reveals a true creator."

14   Compl. Ex. 2 at 10.  However, Plaintiffs do not dispute that the Zervos Catalogue is documentary

15   in nature.  The Zervos Catalogue is a *catalogue raisonné*, and the purpose of a *catalogue raisonné*

16   is to faithfully reproduce an artist's work, not to showcase the original artistic expression of the

17   photographer.  Dkt. No. 70-1 at 16-17 (Facts 34-35).  On balance, the court finds that this factor

18   tilts slightly away from finding fair use.

19           The third factor "asks whether the amount and substantiality of the portion used in relation

20   to the copyrighted work as a whole, are reasonable in relation to the purpose of copying."  *Mattel,*

21   *Inc. v. Walking Mountain Prods*., 353 F.3d 792, 803 (9th Cir. 2003) (citation and quotations

22   omitted).  "This factor has both a quantitative and a qualitative component, so that courts have

23   found that use was not fair where the quoted material formed a substantial percentage of the

24   copyrighted work . . . or where the quoted material was essentially the heart of the copyrighted

25   work."  *New Era Publ'ns Int'l, ApS v. Carol Publ'g. Grp*., 904 F.2d 152, 158 (2d Cir. 1990)

26   (quotation, citation, and parenthetical omitted).  The Zervos catalogue contains some 16,000

27   Case No.: 5:13-cv-05957-EJD
     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
28   IN PART AND GRANTING IN PART PLAINTIFFS' CROSS-MOTION FOR SUMMARY
     JUDGMENT

1    photographs of Picasso's work (Compl. Ex. 2 at 3), while the JEX found that Defendants had

2    copied 1,492 of those photographs (*see* Compl. Ex. 6 at 3; *see also* Reply Mooney Decl. ¶ 3

3    ("more than 1,000")).  In the 2001 Judgment, the *Cour d'Appel* found that *The Picasso Project* did

4    not copy the "sequences and the specific representations which, coming from the personal choices

5    of Mr. ZERVOS . . . cause [the Zervos Catalouge] to be [an] original work[]."  Compl. Ex. 2 at 9.

6    Because Defendants copied less than ten percent of The Zervos Catalogue's photographs and

7    because Plaintiffs have not presented evidence that the copied photographs go to "the heart" of the

8    Zervos Catalogue, the court finds that the third factor weighs in favor of fair use.

9        The last factor considers the effect of the use upon the potential market for or value of the

10    copyrighted work.  This factor is "undoubtedly the single most important element of fair use."

11    *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 566 (1985).  Here, the fourth

12    factor weighs heavily in favor of fair use.  First, the Zervos Catalogue and *The Picasso Project* do

13    not compete.  Plaintiffs argue that they are competing products, but they provide no factual basis

14    for this position.  *The Picasso Project* can be purchased by individual volumes for about $150 per

15    volume.  Mot. Wofsy Decl. ¶ 38.  When sold as a collection of all 28 volumes, it retails for either

16    $2,780, $3,400, or $3,780.  *Id.*; Reply Mooney Decl. (Dkt. No. 71-1) ¶ 3 & Attachment.  By

17    contrast, the original Zervos Catalogue is only available on the second-hand market, and a 2013

18    reprint is only available as a complete set of all of its volumes and sells for $20,000.  Dkt. No. 70-

19    1 at 17 (Facts 36, 37).  Plaintiffs do not dispute that *The Picasso Project* is intended for libraries,

20    academic institutions, art collectors, and auction houses, whereas the Zervos Catalogue has a niche

21    market due to its historic nature and high price.  Dkt. No. 70-1 at 16, 18-19 (Facts 33, 41).  Given

22    their disparate markets and wildly different price points, no reasonable fact finder could conclude

23    that the Zervos Catalogue and *The Picasso Project* compete.

24        This lack of competition is further shown in the Zervos Catalogue's market.  In 1994 and

25    1995, the price of the original Zervos Catalogue at auction houses, such as Sotheby's, was at

26    different times $35,000 and £38,900.  Dkt. No. 70-1 at 18 (Fact 40); Little Decl. (Dkt. No. 61-9)

27    Case No.: 5:13-cv-05957-EJD

28    ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
IN PART AND GRANTING IN PART PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT

United States District Court
Northern District of California

¶ 6. *The Picasso Project* was first published in 1995. Dkt. No. 70-1 at 18 (Fact 40). Thereafter, the price of the Zervos Catalogue rose significantly, going for over $100,000 at no fewer than three auctions from 2007 to 2011, and for $74,200 at an auction in 2012. *Id.*; Little Decl. ¶ 6. While the auction price of the original Zervos Catalogue has declined since then, that appears to be attributable to its 2013 reprint. Since the release of the reprint in 2013, the auction price of the original Zervos Catalogue has declined, going for as little as $8,750 at an auction in 2015. Dkt. No. 70-1 at 18 (Fact 40)*; Little Decl. ¶ 7. Plaintiffs offer no evidence indicating that Defendants use of the photographs in *The Picasso Project* has had any effect—let alone a negative one—on the market for the Zervos Catalogue. This fourth factor weighs heavily in favor of Defendants.

The first, third, and fourth factors all support fair use—with the first and fourth factors strongly supporting fair use. While the second factor slightly leans towards Plaintiffs' position, the Ninth Circuit has characterized that factor as "not . . . terribly significant in the overall fair use balancing." *Mattel*, 353 F.3d at 803 (9th Cir. 2003). The fair use doctrine exists to promote criticism, teaching, scholarship, and research. *See* 17 U.S.C. § 107. It is undisputed that *The Picasso Project*, unlike the Zervos Catalogue, is intended for a market serving those interests. Moreover, the two publications have distinctly separate markets and do not compete. Accordingly, the court finds that the Defendants' use of the photographs falls within the fair use exception.

Having identified a protection for Defendants' use of the photographs, the court continues the *Viewfinder* framework by determining whether French laws provide a comparable fair use protection. 489 F.3d at 481-82. It does not. Plaintiffs concede that the French intellectual property regime makes no exception for the fair use of copyright-protected works. Cross-Mot. (Dkt. No. 63) at 21 ("French law does not provide a 'fair use' defense . . . ."). Sirinelli opines the fair use doctrine is "completely foreign to French law." Mot. Sirinelli Decl. ¶ 53. Commentators have stated that "the French Intellectual Property Code has no comparable fair use provisions." Lyombe Eko, Anup Kumar, Qingjiang Yao, *To Google or Not to Google: The Google Digital*

United States District Court
Northern District of California

*Books Initiative and the Exceptionalist Intellectual Property Law Regimes of the United States and France*, 15 J. Internet L. 12, 24 (2012) (footnote omitted).  The court holds that French law does not provide comparable protections for the fair use of copyright protected materials.

The court is mindful of concerns over comity between the French and U.S. courts. However, the court finds that the Defendants' use of Plaintiffs' photographs qualifies as fair use. The 2012 Judgment is, therefore at odds to the U.S. public policy promoting criticism, teaching, scholarship, and research.  Defendants have carried their burden of showing that there is no genuine issue of material fact that the 2012 Judgment is repugnant to U.S. public policy.

Having reached this conclusion, the court will not recognize the 2012 Judgment.  The parties did not brief the standards for deciding to decline to recognize a foreign judgment under a § 1716(c) defense.  The Restatement, though, provides that if a court finds a § 1716(c) defense to be applicable, then "the court is not required to deny recognition, *but may do so in the interests of justice*."  Restatement (Third) of Foreign Relations Law § 482 (1987) (emphasis added).  The court finds that it is in the interest of justice to deny recognition of the 2012 Judgment.

### ii.   Public Policy Favoring Promotion of the Arts

Defendants also argue that the 2012 Judgment is repugnant to public policy favoring the arts, as expressed by the Intellectual Property Clause of the U.S. Constitution.  This argument is based on their conclusion that the copied photographs are not protectable under U.S. copyright law because they are not original creative works.  However, as they acknowledge, the *Cour d'Appell* has already found that the photographs are themselves original works of art.  Compl. Ex. 2 at 10; Mot. at 18.  The court will not reconsider the merits of the French judgments.  *Ohno*, 723 F.3d at 997.  Accordingly, Defendants, as a matter of law, cannot pursue this argument.

### f.   Whether the judgment conflicts with another final and conclusive judgment (Cal. Civ. Proc. Code § 1716(c)(4))

Defendants next argue that the 2012 Judgment conflicts with the 2013 Judgment from the Second Copyright Proceeding.  Their theory is that there is a conflict between the 2013 Judgment, wherein the French court in the Second Copyright Proceeding found that Plaintiffs lacked standing

1    to sue for copyright infringement, and the 2012 Judgment, in which the JEX allowed Plaintiffs to

2    liquidate the *astreinte*.  This argument fails though because it conflates the copyrights in the

3    photographs of the Zervos Catalogue with the right to liquidate the *astreinte*.  *See supra* § III.B.

4    Whether the *astreinte* transferred away from Plaintiffs with the copyrights is an unresolved factual

5    question.  But even if it did, the 2012 Judgment and 2013 Judgment would still arise from separate

6    subject matters, so the two judgments are not in conflict.  The court grants partial summary

7    judgment in favor of Plaintiffs on this defense.

8       **g.   Whether the judgment was rendered in circumstances that raise substantial**
     **doubt about the integrity of the rendering court with respect to the judgment**

9         **(Cal. Civ. Proc. Code § 1716(c)(7))**

10     Defendants ask the court to decline to recognize the 2012 Judgment because the

11   circumstances surrounding the 2012 Judgment raise substantial doubts as to the integrity of the

12   JEX.  A federal bankruptcy court that considered the comparable provision of the Texas

13   Recognition Act found that it "requires a showing of corruption in the particular case that had an

14   impact on the judgment that was rendered." *In re Carmona*, 580 B.R. 690, 710 (Bankr. S.D. Tex.

15   2018) (quoting *Savage v. Zelent*, 777 S.E.2d 801, 808 (2015)).  Mere "doubt about the fairness of

16   a case" will not suffice.  *Id.*

17     Defendants argue that (1) The JEX did not explicate its assertion of personal jurisdiction

18   over Defendants, and it did not require any demonstration by Plaintiffs of efforts to locate and

19   serve Defendants before declaring them in default, (2) it not comply with its own law regarding

20   default judgments over foreign defendants who have not received notice of the proceedings by

21   waiting the requisite six months after the first mailing of the initiating documents before declaring

22   a foreign defendant in default and ruling on the merits, (3) the euro 2 million award is arbitrary,

23   (4) the wrong defendants were sued, and (5) the JEX allowed Plaintiffs to proceed despite not

24   having standing.  These arguments go to whether the JEX's ruling was correct on the merits; they

25   do not support a finding that the JEX was corrupt.  "[T]his Court will not attempt to insert itself

26   into the shoes of the [French] court and usurp its decision-making." *Id.* at 711.  Because

27   Case No.: 5:13-cv-05957-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING

28   IN PART AND GRANTING IN PART PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT

United States District Court
Northern District of California

1    Defendants have presented no evidence that the JEX was corrupt, the court grants partial summary

2    judgment in favor of Plaintiffs on this defense.

3              **h.   Whether the specific proceeding in the foreign court leading to the judgment
                    was not compatible with the requirements of due process of law (Cal. Civ.
4                    Proc. Code § 1716(c)(8))**

5              Defendants' final defense is the *Astreinte* Proceeding was not compatible with due process

6    of law.  This grounds for nonrecognition is "reserved for challenges as to the integrity or

7    fundamental fairness with regard to the particular proceeding leading to the foreign country

8    judgment." *Alfa-Bank*, 21 Cal. App. 5th at 215 (citation and quotations omitted).  "[F]oreign

9    courts are not required to adopt every jot and tittle of American due process." *Id.* (citation and

10   quotation omitted).  France "is not bound by our notions of due process, and we do not insist on

11   the additional niceties of domestic jurisprudence in deciding whether to enforce a [French]

12   judgment." *Id.* at 215-16.  (citation and quotations omitted).  The court's task is to "decide

13   whether the foreign procedures [were] fundamentally fair and d[id] not offend basic fairness." *Id.*

14   at 216 (citations and quotations omitted).

15             Defendants raise several points showing the *Astreinte* Proceeding was not compatible with

16   due process: (a) they had insufficient notice, (b) the 2012 Judgment issued against the wrong

17   parties, (c) Plaintiffs misrepresented that they still owned the rights to the *astreinte* to the JEX, and

18   (d) the award was arbitrary.  California courts have recognized that adequate notice is a

19   requirement for due process. *See, e.g.*, *Alfa-Bank*, 21 Cal. App. 5th at 216.  The court has found

20   that whether Defendants had sufficient notice to defend the action is a triable question, so the court

21   will not grant partial summary judgment in favor of Plaintiffs on this defense.  However, whether

22   all of Defendants' arguments, taken together, show that the *Astreinte* Proceeding was not

23   compatible with due process is a question of material facts.

24   **IV.   Conclusion**

25             For the reasons discussed above, the court orders as follows:  Partial summary judgment is

26   granted in favor of Plaintiffs on the following defenses (i) that the JEX did not have personal

27   Case No.: 5:13-cv-05957-EJD
     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
28   IN PART AND GRANTING IN PART PLAINTIFFS' CROSS-MOTION FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

1  jurisdiction over Defendants under § 1716(b)(2), (ii) that the 2012 Judgment conflicts with the

2  2013 Judgment under § 1716(c)(4), and (iii) that there are concerns about the integrity of the JEX

3  under § 1716(c)(7).  The court grants Defendants' motion because the 2012 Judgment is repugnant

4  to U.S. public policy under § 1716(c)(3).  The court will not recognize the 2012 Judgment.

5      **IT IS SO ORDERED.**

6  Dated: September 12, 2019

7

8                                        EDWARD J. DAVILA
                                        United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  Case No.: 5:13-cv-05957-EJD
    ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
28  IN PART AND GRANTING IN PART PLAINTIFFS' CROSS-MOTION FOR SUMMARY
    JUDGMENT

United States District Court
Northern District of California