FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VINCENT SICRE DE FONTBRUNE;
LOAN SICRE DE FONTBRUNE; ADEL
SICRE DE FONTBRUNE; ANAIS SICRE
DE FONTBRUNE, in their capacity as
personal representatives of the Estate
of YVES SICRE DE FONTBRUNE,
*Plaintiffs-Appellants/*
*Cross-Appellees,*

v.

ALAN WOFSY; ALAN WOFSY &
ASSOCIATES,
*Defendants-Appellees/*
*Cross-Appellants.*

Nos. 19-16913
19-17024

D.C. No.
5:13-cv-05957-
EJD

OPINION

Appeal from the United States District Court
for the Northern District of California
Edward J. Davila, District Judge, Presiding

Argued and Submitted February 8, 2022
San Francisco, California

Filed July 13, 2022

Before:  Andrew D. Hurwitz and Lawrence VanDyke,
Circuit Judges, and Joan N. Ericksen,* District Judge.

Opinion by Judge Ericksen

### SUMMARY**

#### Foreign Judgments

The panel reversed the district court's summary judgment entered for defendants Alan Wofsy and Alan Wofsy & Associates (collectively "Wofsy") in an action brought by Yves Sicre de Fontbrune in California state court seeking recognition of a French money judgment.

The photographer Christian Zervos created the *Zervos Catalogue* of the works of Pablo Picasso, which was originally published under the label of *Cahiers d'Art*. In 1979, Sicre de Fontbrune acquired the rights for the business capital of *Cahiers d'Art*. Wofsy produced a series of books, titled *"The Picasso Project,"* that contained reproductions of photographs from the *Zervos Catalogue*.

The French judgment found that Wofsy had violated an *astreinte* — a French legal device that imposed money damages for the continued use of copyrighted photographs of Pablo Picasso's works. Sicre de Fontbrune had obtained

---

\* The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota, sitting by designation.

\*\* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that *astreintre* as a form of relief in a 2001 French judgment finding that the photographs' copyrights were infringed. The district court granted summary judgment for Wofsy based on a defense to recognition under California's Uniform Foreign-Country Money Judgment Recognition Act, Cal. Civ. Proc. Code §§ 1713-1725, namely, the defense that the French judgment was repugnant to United States public policy protecting free expression.

The panel held that in international diversity cases, such as this one, the enforceability of foreign judgments is generally governed by the law of the state in which enforcement is sought; and the California Recognition Act governed. The Recognition Act lists several grounds for nonrecognition. Five statutory grounds for nonrecognition of the French judgment are at issue in this appeal.

First, Sicre de Fontbrune challenged the district court's conclusion that the French judgment was repugnant to United States public policy favoring free expression. The fair use defense to copyright infringement is one of the built-in First Amendment accommodations that ease the tension between free expression and U.S. copyright law. As part of its public policy defense, Wofsy asserted that the fair use doctrine of U.S. copyright law – a feature that France's copyright scheme lacked – would have protected the copying of the photographs at issue. The panel rejected this contention. The fair use defense requires the analysis of four statutory factors, and the panel examined the factors with respect to the individual photographs in the catalogue at issue. Concerning the first factor - the "purpose and character" of the use, the panel held that the undisputed evidence showed that the use of the copyrighted photographs was commercial and non-transformative. This factor weighed against a finding of fair use. For the second fair use

factor – the nature of the copyrighted work, the panel held that the photographs' creative qualities prevented this factor from weighing heavily, if at all, in favor of fair use. With the third factor – the amount and substantiality of the portion used, the panel held this factor weighed against fair use where the copying included the entirety of the copyrighted photographs at issue and Wofsy did not transform the photographs. With the fourth fair use factor – the effect on potential market or value of the copyrighted work, the panel held that this factor weighed against fair use where there was no evidence countering the presumption of market harm, which arose where the allegedly infringing use was both commercial and non-transformative. After weighing the four factors, the panel had serious doubts that a fair use defense would protect the copying of the photographs at issue, even if the nature of the copyrighted works were to favor fair use. Wofsy's inability to urge a fair use defense in France did not place the French judgment in conflict with fundamental American constitutional principles, and Sicre de Fontbrune was therefore entitled to partial summary judgment on this defense.

Second, both parties appealed the district court's denial of summary judgment concerning the assertion that the French court lacked subject matter jurisdiction. The French appellate courts did not evaluate whether the French trial court, the *Tribunal de Grande Instance de Paris* ("TGI"), had subject matter jurisdiction over the *astreinte* proceeding. The panel held that the TGI's subject matter jurisdiction did not depend on Sicre de Fontbrune's standing, and therefore the district court erred in holding otherwise. There is no indication that a plaintiff's lack of standing circumscribes the judicial power – the subject matter jurisdiction – of French courts. The panel concluded that Sicre de Fontbrune is entitled to partial summary judgment on this defense.

Third, Wofsy challenged the district court's grant of summary judgment to Sicre de Fontbrune regarding the assertion that the French court lacked personal jurisdiction over Wofsy. A court applying California's Recognition Act shall not refuse recognition of a foreign-country judgment for lack of personal jurisdiction if the defendant "voluntarily appeared in the proceeding." Cal Civ. Proc. Code § 1717(a)(2). The panel agreed with the district court that Wofsy waived this defense through a voluntary appearance when he petitioned the TGI to set aside a 2012 judgment. The panel concluded that the district court properly granted partial summary judgment to Sicre de Fontbrune regarding the defense of lack of personal jurisdiction.

Fourth, Wofsy asserted that he was entitled to summary judgment on the defense that he received inadequate notice of the proceedings that resulted in the French judgment. The California Supreme Court has not clarified the showing that a defendant must make to prove the insufficient notice defense. A California Court of Appeal has held that a mere failure of actual notice does not prove the inadequate notice defense. The panel accepted the Court of Appeal's holding that the insufficient notice defense requires the proponent to prove the absence of a constitutionally adequate attempt at actual notice. The panel considered whether the attempts to serve Wofsy before the October 2011 hearing constituted sufficient efforts at notice, despite their failure. The panel held that the failed attempts to service process did not, by themselves, disprove the notice defense. There was, however, a factual dispute as to whether Wofsy received *actual* notice of the pendency of the action and an opportunity to present objections. The panel held that the district court appropriately left to the finder of fact to determine whether Wofsy "receive[d] notice of the

proceeding in sufficient time to enable [him] to defend."
Cal. Civ. Proc. Code § 1716(c)(1).

Fifth, Wofsy argued that Sicre de Fontbrune obtained the
French judgment by fraud that deprived Wofsy of an
adequate opportunity to present his case. The panel held that
even assuming that Sicre de Fontbrune deceived the TGI as
to his legal interest in the *astreinte*, Wofsy was not entitled
to summary judgment on the claim that the
misrepresentation "deprived [him] of an adequate
opportunity to present [his] case." *See* Cal. Civ. Code
§ 1716(c)(2). A question remains as to whether Wofsy
reasonably should have detected the alleged fraud during the
French proceedings, and therefore as to whether such fraud
deprived him of an adequate opportunity to present his case.
The panel concluded that the district court did not err by
denying Wofsy summary judgment on the fraud defense.

The panel held that Wofsy was not entitled to summary
judgment based on the public policy defense. No other
ground for nonrecognition at issue in this appeal supplied an
alternative basis for affirming the judgment below. The
panel reversed and remanded for further proceedings.

## COUNSEL

Richard J. Mooney (argued), RJM Litigation Group, San
Francisco, California, for Plaintiffs-Appellants.

Neil A.F. Popović (argued), Jonathan G. Borle, and Matthew
G. Halgren, Sheppard Mullin Richter & Hampton LLP, San
Francisco, California, for Defendants-Appellees.

Kathryn C. Thornton (argued), Ropes & Gray LLP, Washington, D.C.; Marta F. Belcher, James R. Batchelder, and Monica A. Ortel, Ropes & Gray LLP, East Palo Alto, California; Corynne McSherry, Mitchell Stoltz, and Alexandra Moss, Electronic Frontier Foundation, San Francisco, California; Robert S. Adams IV and Avery Gardiner, Center for Democracy & Technology, Washington, D.C.; John Bergmayer, Public Knowledge, Washington, D.C.; for Amici Curiae Project Gutenberg Literary Archive Foundation, Electronic Frontier Foundation, Center for Democracy and Technology, and Public Knowledge.

## OPINION

ERICKSEN, District Judge:

### INTRODUCTION

Yves Sicre de Fontbrune brought this action in California state court seeking recognition of a French money judgment. The French judgment found that Defendants, Alan Wofsy and Alan Wofsy & Associates (collectively, "Wofsy"), had violated an *astreinte*—a French legal device that imposed money damages for the continued use of copyrighted photographs of Pablo Picasso's works. Sicre de Fontbrune had obtained that *astreinte* as a form of relief in a 2001 French judgment finding that the photographs' copyrights were infringed.

After removal, the district court considered motions for summary judgment on eight defenses to recognition under the California version of the Uniform Foreign-Country Money Judgment Recognition Act, Cal. Civ. Proc. Code §§ 1713–1725. The district court granted summary

judgment for Wofsy based on one of those defenses: that the French judgment was repugnant to United States public policy protecting free expression. Sicre de Fontbrune appeals,[1] and Wofsy cross-appeals the denial of summary judgment on other defenses. We conclude that summary judgment was not proper, and we reverse and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Starting in 1932, the photographer Christian Zervos created a *catalogue raisonné*[2] (the *"Zervos Catalogue"*) of the works of the Spanish artist Pablo Picasso. *Sicre de Fontbrune*, 838 F.3d at 995. The catalogue ultimately featured nearly 16,000 photographs of Picasso's works. *Id.* Zervos originally published this catalogue under the label of *Cahiers d'Art*. *Id.* In 1979, Sicre de Fontbrune acquired the rights to the business capital of *Cahiers d'Art*, including its intellectual property. *Id.*

In 1991, Alan Wofsy Fine Arts LLC acquired permission from the Estate of Pablo Picasso to publish a work illustrating and describing works by Picasso. Wofsy then produced a series of books on Picasso, titled *"The Picasso Project"*—a chronological illustrated catalogue of Picasso's

---

[1] Sicre de Fontbrune died in 2015. His wife and children were later substituted as successors in interest. *Sicre de Fontbrune v. Wofsy*, 838 F.3d 992, 996 n.3 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (Nov. 14, 2016). For convenience, we refer to them collectively as "Sicre de Fontbrune."

[2] A *catalogue raisonné* is the "'complete published catalogue of an artist's work.'" *Sicre de Fontbrune*, 838 F.3d at 995 n.1 (quoting The Concise Oxford Dictionary of Art Terms Online (Michael Clarke & Deborah Clarke eds., 2d ed. 2010)).

works. *The Picasso Project* contained reproductions of photographs from the *Zervos Catalogue*.

In 1996, at Sicre de Fontbrune's request, French police seized two volumes of *The Picasso Project* that were offered for sale at a book fair in Paris. Sicre de Fontbrune then sued Alan Wofsy in France for copyright infringement. Alan Wofsy appeared, and Alan Wofsy & Associates intervened. In 1998, a trial court, the *Tribunal de Grande Instance de Paris* ("*TGI*"), determined that the photographs in the *Zervos Catalogue* were documentary in nature and therefore ineligible for copyright protection.

On September 26, 2001, the French *Cour d'Appel* (Court of Appeal) reversed and entered judgment in favor of Sicre de Fontbrune, determining that the photographs at issue did not merely copy Picasso's works, but rather added creative features through "deliberate choice[s] of lighting, the lens, filters, [and] framing or angle of view."[3] The court also confirmed that Sicre de Fontbrune had obtained "the intellectual property rights on the intangible items attached to the stock, to the [Zervos] catalogue and the photographs that it contains" when he acquired the *Cahiers d'Art* business in 1979. The *Cour d'Appel* found Wofsy "guilty of infringement of copyright," and awarded various relief to Sicre de Fontbrune, including a legal device known as an *astreinte*, under which Wofsy would be liable for damages of 10,000 francs for each proven infraction of the prohibition on using the photographs at issue. Wofsy appealed to the *Cour de Cassation* (the French Civil Supreme Court), but that court removed the appeal from its docket after Wofsy did not pay the other damages and costs the *Cour d'Appel*

---

[3] The original judgments appear in French. We refer to the certified translations provided by the parties.

awarded to Sicre de Fontbrune. On December 20, 2001, Sicre de Fontbrune sold his business capital in *Cahiers d'Art*, including all its tangible and intangible components, to a third party.

Sicre de Fontbrune initiated a new lawsuit (the "*Astreinte* Proceeding") in the *TGI* against Wofsy on July 22, 2011, seeking to "liquidate" the *astreinte* awarded by the *Cour d'Appel* in 2001. Sicre de Fontbrune claimed that copies of *The Picasso Project* were offered for sale in a French bookstore in 2011, and that 1,492 photographs from the *Zervos Catalogue* were reproduced in these works in violation of the *astreinte*.

Wofsy maintains that he was never served with process in the *Astreinte* Proceeding. Sicre de Fontbrune asserts that a *huissier*—a bailiff-like officer of the French court—sent the complaint and French equivalent of a summons to Wofsy through procedures consistent with the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965 ("Hague Service Convention"), 20 U.S.T. 361, T.I.A.S. No. 6638. The French court official requested service at addresses that the French courts already had on file: 401 China Basin Street in San Francisco, and P.O. Box 2210 in San Francisco. The U.S. process server, however, failed to effect service.

The *TGI* held a hearing in the *Astreinte* Proceeding on October 25, 2011. Wofsy did not appear. On November 15, 2011, the *TGI* ordered another hearing. The order contained a brief description of the claim and proceedings to date and the decision to reopen the proceedings for a hearing on December 13, 2011, "for the production by [Sicre de Fontbrune] of the certificate from the foreign authority responsible for notification of the document instituting the proceedings," as requested in accordance with Article 6 of

the Hague Service Convention. Wofsy received a copy of that order in late November 2011. A letter accompanying the order explained the time limits for appealing the order.

At the December 2011 hearing, the *TGI* accepted the requested service certificates, and concluded that Wofsy had been "duly summoned" in accordance with the French Civil Procedure Code. But Wofsy again failed to appear. The *TGI* entered a default judgment against Wofsy on January 10, 2012, ordering Wofsy to pay 2,000,000 Euros to Sicre de Fontbrune in liquidation of the *astreinte*.

While the *Astreinte* Proceeding was pending, Sicre de Fontbrune commenced another lawsuit in the *TGI* on September 20, 2011. The suit alleged copyright infringement by Wofsy and two defendants not party to the instant lawsuit: Alan Wofsy Fine Arts LLC, and the French bookstore where copies of *The Picasso Project* had been discovered for sale in 2011. In January 2013, the *TGI* found that on December 20, 2001, Sicre de Fontbrune had sold the "commercial rights which [he] had acquired on May 31, 1979," and that he no longer had standing to sue for copyright infringement.

On February 25, 2014, Wofsy initiated a proceeding in the *TGI* seeking to vacate the 2012 *astreinte* judgment, arguing that Sicre de Fontbrune's transfer of copyrights in December 2001 deprived him of standing to bring the *Astreinte* Proceeding. The *TGI* dismissed this "Review Proceeding" in August 2014. Wofsy appealed, and the *Cour d'Appel* affirmed the dismissal in April 2018, finding the filing of the Review Proceeding untimely. The *Cour de*

*Cassation* affirmed that decision on October 17, 2019. ECF Nos. 24 (Case No. 19-16913), 22 (Case No. 19-17024).[4]

Before Wofsy filed the Review Proceeding, though, Sicre de Fontbrune brought the instant action in the Superior Court of California in Alameda County in November of 2013, seeking recognition of the *astreinte* judgment. After Wofsy removed the action to federal court, the district court dismissed the case with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). We reversed, holding that the *astreinte* was not a penalty but rather a judgment for "a sum of money" cognizable under the Recognition Act. *Sicre de Fontbrune*, 838 F.3d at 1007.

On remand, the district court heard cross-motions for summary judgment on eight defenses under the Recognition Act. *See* Cal. Civ. Proc. Code § 1716. The district court granted summary judgment for Wofsy on only one of those defenses, determining that the *astreinte* judgment was repugnant to public policy, and exercising its discretion to decline recognition. Sicre de Fontbrune appeals the grant of summary judgment to Wofsy on that issue, and appeals the district court's denial of partial summary judgment to Sicre de Fontbrune on the defense of lack of subject matter jurisdiction. Wofsy cross-appeals the grant of partial summary judgment to Sicre de Fontbrune on the defense of lack of personal jurisdiction, and appeals the denial of summary judgment to Wofsy on the defenses based on lack of subject matter jurisdiction, insufficient notice, and fraud.

---

[4] We take judicial notice of the 2019 *Cour de Cassation* opinion and its certified English translation.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review a district court's final judgment under 28 U.S.C. § 1291. Our review extends to an order denying partial summary judgment that has become part of a final judgment. *Scribner v. WorldCom, Inc.*, 249 F.3d 902, 907 (9th Cir. 2001).

We review a summary judgment *de novo*. *Id.* We "view the evidence in the light most favorable to the nonmoving party, determine whether there are any genuine issues of material fact, and decide whether the district court correctly applied the relevant substantive law." *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 989 (9th Cir. 2016) (en banc) (per curiam).

## DISCUSSION

"In international diversity cases such as this one, 'enforceability of judgments of courts of other countries is generally governed by the law of the state in which enforcement is sought.'" *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 990 (9th Cir. 2013) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1212 (9th Cir. 2006)). In this removed action, California law—the Recognition Act—governs.[5]

---

[5] Although there is no contest about diversity of citizenship, the district court determined that the defendants in this case are citizens and residents of California—a finding not disputed on appeal. Although a defendant's citizenship in the state where an action is brought ordinarily prevents removal, 28 U.S.C. § 1441(b)(2), that rule is "procedural, or non-jurisdictional," *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 939 (9th Cir. 2006). Removal is unchallenged here.

14 SICRE DE FONTBRUNE V. WOFSY

California's Recognition Act is modeled on the 2005 version of the Uniform Foreign-Country Money Judgments Recognition Act. *AO Alfa-Bank v. Yakovlev*, 230 Cal. Rptr. 3d 214, 221 (Ct. App. 2018), *as modified on denial of reh'g* (Apr. 3, 2018); *see* Unif. Foreign-Country Money Judgments Recognition Act (Nat'l Conf. of Comm'rs on Unif. State L. 2005). Amendments to California's Recognition Act became effective in 2018. *See Alfa-Bank*, 230 Cal. Rptr. 3d at 221. But those amendments apply only to claims commenced after their effective date. *Id.* at 222. The district court was thus correct to apply the version of the state Recognition Act effective at the time Sicre de Fontbrune filed this action in 2013.[6]

A majority of states have adopted either the 1962 version of the Uniform Foreign-Country Money Judgments Recognition Act, or its 2005 update. *Ohno*, 723 F.3d at 990 n.8. Non-California authorities that interpret the 1962 or the 2005 uniform acts, or that apply principles of comity-based recognition to foreign judgments, carry persuasive value in the application of California's Recognition Act. *Alfa-Bank*, 230 Cal. Rptr. 3d at 222–23 (citing Cal. Civ. Proc. Code § 1722).

"Once coverage under the Uniform Act is established," as it has been here,[7] "the presumption in favor of enforcement applies," and the party resisting recognition

---

[6] As in the district court's order, all citations to the Recognition Act in this opinion refer to the version of the Recognition Act in effect at the time this suit began in 2013, unless otherwise noted. *See* Cal. Civ. Proc. Code §§ 1713 *et seq.* (West 2013).

[7] Given our previous opinion, the parties no longer dispute that the 2012 *Astreinte* Judgment falls within the coverage of the Recognition Act. *See Sicre de Fontbrune*, 838 F.3d at 1007.

must establish a ground for nonrecognition. *Ohno*, 723 F.3d at 991 (quoting Cal. Civ. Proc. Code § 1716(d)). The Recognition Act lists several grounds for nonrecognition. Some grounds, if established, preclude recognition, Cal. Civ. Proc. Code § 1716(b), but others only confer discretion on courts to deny recognition, Cal. Civ. Proc. Code § 1716(c).

Five statutory grounds for nonrecognition are at issue in this appeal. First, Sicre de Fontbrune challenges the district court's conclusion that the French judgment was repugnant to U.S. public policy favoring free expression, and argues that he was entitled to partial summary judgment on this issue. Second, both parties appeal the district court's denial of summary judgment concerning the assertion that the French court lacked subject matter jurisdiction. Third, Wofsy challenges the district court's grant of partial summary judgment to Sicre de Fontbrune regarding the assertion that the French court lacked personal jurisdiction over Wofsy. Fourth, Wofsy asserts that he was entitled to summary judgment on the defense that he received inadequate notice of the proceedings that resulted in the French judgment. And fifth, Wofsy argues that Sicre de Fontbrune obtained the French judgment by fraud that deprived Wofsy of an adequate opportunity to present his case.

We conclude that Sicre de Fontbrune—not Wofsy—was entitled to summary judgment on the defense of repugnancy to public policy. We also conclude that no other defenses raised on appeal provide an alternate basis to affirm the grant of summary judgment. *See Spencer v. Peters*, 857 F.3d 789, 797 n.3 (9th Cir. 2017). Accordingly, we reverse the district court's judgment and remand for further proceedings.

## I.  Public Policy

The California Recognition Act allows a court to decline to recognize a foreign-country money judgment if the "judgment or the cause of action or claim for relief on which the judgment is based is repugnant to the public policy of [California] or of the United States."  Cal. Civ. Proc. Code § 1716(c)(3).  The United States undoubtedly has robust public policy favoring free expression.  *See Cohen v. California*, 403 U.S. 15, 24 (1971) ("The constitutional right of free expression is powerful medicine[.]").  But "some restriction on expression is the inherent and intended effect of every grant of copyright." *Golan v. Holder*, 565 U.S. 302, 327–28 (2012).   The fair use defense to copyright infringement is one of the "built-in First Amendment accommodations" that ease the apparent tension between free expression and U.S. copyright law.  *See Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003).

The district court determined that Wofsy would have prevailed on a fair use defense to the copyright infringement claim on which the *astreinte* judgment was based.  The court also concluded that French law's failure to allow for Wofsy's fair use defense made the judgment repugnant to U.S. public policy protecting expression.

"California courts have set a high bar for repugnancy under the Uniform Act." *Ohno*, 723 F.3d at 1002. The issue is not simply whether the "foreign judgment or cause of action is contrary to our public policy."  *Id.*  Rather, the question is whether either is "so offensive to our public policy as to be prejudicial to recognized standards of morality and to the general interests of the citizens." *Hyundai Sec. Co. v. Lee*, 182 Cal. Rptr. 3d 264, 272 (Ct. App. 2015) (cleaned up), *as modified* (Jan. 14, 2015). Under this standard, a "difference in law, even a marked one, is not

sufficient to raise a public policy issue. Nor is it relevant that the foreign law allows a recovery that the forum state would not allow." *Id.* (cleaned up). Instead, public policy is violated "only if recognition or enforcement of the foreign-country judgment would tend clearly to injure public health, the public morals, or the public confidence in the administration of law, or would undermine that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel." *Id.* (cleaned up).

The standard is not lower where the asserted repugnancy arises from inconsistency with constitutional principles rather than with statutes or common law. *Ohno*, 723 F.3d at 1004. In such cases, "only judgments presenting a *direct and definite* conflict with fundamental American constitutional principles will be denied recognition because repugnant." *Id.* at 1004–05 (emphasis added) (noting cases finding repugnancy to the First Amendment where the foreign judgments "would *unquestionably* violate the Constitution were they issued here with respect to domestic activity"). Thus, in *Ohno*, this Court determined that a judgment was not repugnant to public policy in part because the defendant's position—that imposing tort liability on a church's religious practice was incompatible with the religion clauses of the California and United States constitutions—was debatable. *Id.* at 1009.

Wofsy's public policy defense rests on two assertions: first, that the fair use doctrine of U.S. copyright law—a feature that France's copyright scheme lacks—would have protected the copying of the photographs at issue; and second, that a judgment imposing copyright liability based on copying that would qualify as fair use is repugnant to our public policy. For the reasons below, we reject the first of

these contentions, and therefore need not reach the second. *See S.A.R.L. Louis Feraud Int'l v. Viewfinder, Inc.*, 489 F.3d 474, 483 (2d Cir. 2007) ("If the publication of photographs of copyrighted material in the same manner as [the defendant] has done in this case would not be fair use under United States law, then the French intellectual property regime sanctioning the same conduct certainly would not be repugnant to public policy.").

The fair use defense under U.S. copyright law requires the analysis of four statutory factors. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994). They are "(1) the purpose and character of the use, . . . (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107.

While Wofsy claims fair use of the *Zervos Catalogue* as a whole, the individual *photographs* within the *Zervos Catalogue* are at issue in this case. The 2001 *Cour d'Appel* decision held that these photographs were eligible for copyright protection in France and that that the copyright had been infringed. And the *astreinte* provided for damages of 10,000 francs for each violation of the prohibition on further use of the *photographs*. The 2012 *astreinte* judgment recognized damages of 14,920,000 francs,[8] based on the 1,492 photographs copied from the *Zervos Catalogue*. We accordingly examine the fair use factors with respect to the photographs, and need not analyze fair use with respect to the *Zervos Catalogue* as a whole.

---

[8] The court limited the actual *astreinte* award to the amount that Sicre de Fontbrune had sought—2,000,000 Euros.

## A. Purpose and character of use

The "purpose and character" of an allegedly infringing use may indicate fair use, depending in part on "whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107. Commercial use "'tends to weigh against a finding of fair use.'" *Campbell*, 510 U.S. at 585 (quoting *Harper & Row Publ'ers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985)). It is "not conclusive . . . but rather a fact to be weighed along with others in fair use decisions." *Id.* (citing *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 448–49 (1984)) (cleaned up). The "central purpose" of considering the "purpose and character" of the work is to determine whether the new work is "transformative"—that is, whether it "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Id.* at 579.

Wofsy concedes that *The Picasso Project* is a commercial venture. But the district court observed that *The Picasso Project* was "intended for libraries, academic institutions, art collectors, and auction houses," and concluded that *The Picasso Project's* purpose aligned with the "criticism, comment, news reporting, teaching . . . , scholarship, or research" purposes that Section 107 characterizes as non-infringing. *See* 17 U.S.C. § 107. The district court relied on that conclusion to find that the first fair use factor weighed "strongly" in favor of fair use.

We disagree. The "use" at issue is the allegedly infringing one—the reproduction of copyrighted photographs in a book offered for sale. The "end-user's utilization of the product is largely irrelevant." *Zomba Enters., Inc. v. Panorama Recs., Inc.*, 491 F.3d 574, 582 (6th Cir. 2007); *see also Princeton Univ. Press v. Michigan*

*Document Servs., Inc.*, 99 F.3d 1381, 1386 (6th Cir. 1996) (rejecting a fair use defense where a college-town copy shop copied portions of books and sold them to students in "coursepacks" intended for educational use).

Nor does the evidence support a finding of transformative use that could rebalance this factor in Wofsy's favor.[9]  It is true that even exact copies can be transformative.  For example, this Court has recognized transformative use in the replication of copyrighted photographs as low-resolution thumbnails for an internet search engine, because the thumbnails "served an entirely different function," i.e., improving access to information. *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818–19 (9th Cir. 2003).  The reduction in resolution made it "unlikely that anyone would use [the] thumbnails for [the] illustrative or aesthetic purposes" of the protected works. *Id.* at 819.

Wofsy argues that he used the photographs only as documentation of Picasso's works, without regard to the photographs' creative qualities.  But a mere "'difference in purpose is not quite the same thing as transformation.'" *Monge v. Maya Mags., Inc.*, 688 F.3d 1164, 1176 (9th Cir. 2012) (quoting *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 108 (2d Cir. 1998)).  Moreover, the purposes of the works overlap. *The Picasso Project* and the photographs both present the works of Picasso.  This much is evident from the fact that the photographs—though deemed by the French *Cour d'Appel* to include creative or artistic qualities

---

[9] Wofsy argues that Sicre de Fontbrune waived any argument about transformative use by failing to address it in the district court.  But as the party resisting recognition of the French judgment, Wofsy bore the burden to establish a ground for nonrecognition. *Ohno*, 723 F.3d at 991; Cal. Civ. Proc. Code § 1716(d).

of their own—originally were published as part of a *catalogue raisonné* documenting Picasso's works. The exact copies in this case therefore did not serve an "entirely different function" than the originals. *Cf. Kelly*, 336 F.3d at 818–19.

The fact that *The Picasso Project* included informative captions and organized the photographs so as to facilitate research does not change our conclusion. Adding informative captions does not necessarily transform copyrighted works. *See Monge*, 688 F.3d at 1174 (finding that "neither minor cropping nor the inclusion of headlines or captions transformed" copyrighted photographs).

In sum, the undisputed evidence shows that the use of the copyrighted photographs was commercial and non-transformative. This factor therefore weighs against a finding of fair use.

**B. Nature of the copyrighted work**

The second fair use factor considers "two aspects of the work: the extent to which it is creative and whether it is unpublished." *Id.* at 1177. The "scope of fair use is narrower with respect to unpublished works" than with respect to published ones. *Harper & Row*, 471 U.S. at 564. The parties agree that the photographs were published in the *Zervos Catalogue*. Accordingly, the district court properly focused its inquiry on creativity.

"Photos are generally viewed as creative, aesthetic expressions of a scene or image and have long been the subject of copyright." *Monge*, 688 F.3d at 1177. This is so "especially when they are created for public viewing." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 743 (9th Cir. 2019). Even "point-and-shoot" photographs that are "not highly

artistic" can merit copyright protection. *Monge*, 688 F.3d at 1177.

Wofsy emphasizes the documentary purpose of the *Zervos Catalogue*. But that purpose does not negate any creative character displayed by the photographs themselves. Wofsy points to the expert declaration of a prominent art historian opining that photographs in *catalogues raisonnes*, in general, lack an artistic purpose, and that the photographs in the *Zervos Catalogue* are "not themselves works of art." Yet, the French *Cour d'Appel* recognized that the photographs have creative elements reflecting deliberate choices of lighting, filters, framing, and angle of view. The fact that gallery owners and readers of *Cahiers d'Art* (rather than Zervos himself) may have created some of the disputed photographs does not contradict the French court's finding that the photographs exhibit creativity.

The photographs' creative qualities prevent this factor from weighing heavily, if at all, in favor of fair use.[10]

## C. Amount and substantiality of the portion used

The third fair use factor is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107. "[C]opying an entire work militates against a finding of fair use." *VHT*, 918 F.3d at 744 (quoting *Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1118 (9th Cir. 2000)) (cleaned up). But,

---

[10] The Second Circuit has concluded, albeit in dicta, that copied works' ineligibility for copyright in the United States does not, by itself, suffice to establish repugnancy of a judgment based on that copying. *Louis Feraud*, 489 F.3d at 483. Wofsy does not argue on this appeal that the photographs would be uncopyrightable under U.S. law, and we therefore do not address the issue.

because the purpose of the copying informs the analysis, copying entire works can qualify as fair use in some circumstances, as where the copying is transformative. *See Kelly*, 336 F.3d at 821.

The district court focused on the fact that *The Picasso Project* reproduced only 1,492 photographs out of the roughly 16,000 photographs in the *Zervos Catalogue*. But the copying included the entirety of the copyrighted photographs at issue.   And especially in view of our conclusion that Wofsy did not transform the photographs, we are unpersuaded that this is a case like *Kelly* in which copying the entirety of each photograph was necessary. *See id.* This factor weighs against fair use.

### D.  Effect on potential market or value

The fourth fair use factor is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. "This last factor is undoubtedly the single most important element of fair use." *Harper & Row*, 471 U.S. at 566.  We consider not only the effect of the allegedly infringing work itself, but also "whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590 (cleaned up).

Wofsy offered evidence that auction prices for the *Zervos Catalogue* have *increased* during the time that *The Picasso Project* has been on the market.  While this is circumstantial evidence that *The Picasso Project* has not depressed the market for the *Zervos Catalogue*, it proves nothing about the effect on the market for licensing the disputed photographs. The record supplies no evidence that widespread appropriation of those photographs in published

books would only negligibly affect the market for the photographs.

Furthermore, where the allegedly infringing use is both commercial and non-transformative, a presumption of market harm arises. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 861 (9th Cir. 2017) (citing *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 531 (9th Cir. 2008)). We have concluded that *The Picasso Project's* use of the photographs was commercial and non-transformative. With no evidence countering the resulting presumption of market harm, this factor weighs against fair use.

## E. Conclusion on fair use and public policy

Fair use may depend on factual findings, but the ultimate question of whether facts indicate fair use is legal in nature. *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1199 (2021). After weighing the four factors above, we have serious doubts that a fair use defense would protect the copying of the photographs at issue, even if the nature of the copyrighted works were to favor fair use. Because it is at least highly debatable—if not absolutely clear—that a fair use defense would not protect the conduct underlying the judgment of which Sicre de Fontbrune seeks recognition, Wofsy's inability to urge a fair use defense in France does not place the French judgment in "direct and definite conflict with fundamental American constitutional principles." *Ohno*, 723 F.3d at 1004. Sicre de Fontbrune is therefore entitled to partial summary judgment on this defense.[11]

---

[11] We leave for another day the question of whether a defendant's lack of opportunity to assert a clearly *meritorious* fair use defense would render a foreign judgment repugnant to the public policy of the United States or of California.

## II.  Lack of Subject Matter Jurisdiction

The applicable version of the California Recognition Act
provides that a court "shall not" recognize a foreign-country
judgment if the "foreign court did not have jurisdiction over
the subject matter."  Cal. Civ. Proc. Code § 1716(b)(3).
"Courts and commentators agree that subject matter
jurisdiction must be assessed with reference to foreign law."
Tanya J. Monestier, *Whose Law of Personal Jurisdiction?
The Choice of Law Problem in the Recognition of Foreign
Judgments*, 96 B.U. L. Rev. 1729, 1747 (2016).   "In
determining foreign law, the court may consider any relevant
material or source, including testimony, whether or not
submitted by a party or admissible under the Federal Rules
of Evidence."  Fed. R. Civ. P. 44.1; *Sicre de Fontbrune*,
838 F.3d at 997.

The district court determined that the French court's
jurisdiction over the subject matter of the 2012 *Astreinte*
Proceeding depended on Sicre de Fontbrune's standing; that
his standing depended on whether he retained rights in the
*astreinte*; and that whether he retained rights in the *astreinte*
turned on the disputed question of whether Sicre de
Fontbrune had transferred those rights.   Our conclusion
regarding the first of those assertions diverges from the
district court's view and disposes of the subject matter
jurisdiction defense.

The French appellate courts did not evaluate whether the
*TGI* had subject matter jurisdiction over the *Astreinte*
Proceeding.  Instead, they concluded that Wofsy's effort to
set aside the *Astreinte* Judgment was untimely.  We therefore
lack an authoritative statement from the French courts as to
whether the *TGI* possessed subject matter jurisdiction over
the *Astreinte* Proceeding.

The parties' submissions and our own research, however, assure us that the *TGI*'s subject matter jurisdiction did not depend on Sicre de Fontbrune's standing. Wofsy's own expert explained that French courts assess standing in terms of "admissibility," rather than jurisdiction. The French Code of Civil Procedure provides, as translated, that no claim is "admissible" unless brought by a person who has the right to act; and that the right to act is "available to all those who have a legitimate interest in the success or dismissal of a claim." *Code de Procédure Civile* arts. 31, 32 (Fr.).

We acknowledge, as the district court emphasized, that the "practical result" of a lack of standing in French courts resembles that of a failure of subject matter jurisdiction in the federal courts of the United States: dismissal without a decision on the merits. *See Brownback v. King*, 141 S. Ct. 740, 749 (2021) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998)) ("Ordinarily, a court cannot issue a ruling on the merits 'when it has no jurisdiction' because 'to do so is, by very definition, for a court to act ultra vires.'"). But the plain language of California's Recognition Act requires a proponent of the subject matter jurisdiction defense to establish that the foreign court "did not have jurisdiction over the subject matter." Cal. Civ. Proc. Code § 1716(b)(3). We are aware of no authority holding that a procedural defect that produces a similar practical result can suffice.

Our own research similarly yields no indication that a plaintiff's lack of standing circumscribes the judicial power—the subject matter jurisdiction—of French courts. The provisions of the Code of Civil Procedure that set forth the requirements for standing appear within Title II of the Code, titled "L'action" ("The Action"). *Code de Procédure*

*Civile* tit. II (Fr.). A separate title addresses the "compétence" (competence) of the courts, including their jurisdiction. *Code de Procédure Civile* tit. III (Fr.).

Even if we were to assess subject matter jurisdiction with reference to domestic law, we could not say that a lack of standing necessarily deprives a court of subject matter jurisdiction. To be sure, a party must show the "irreducible constitutional minimum of standing" to vest an Article III federal court with subject matter jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). But California is one of numerous states whose judiciaries' subject matter jurisdiction does not depend on standing. *Jasmine Networks, Inc. v. Super. Ct.*, 103 Cal. Rptr. 3d 426, 432 (Ct. App. 2009); *Weatherford v. City of San Rafael*, 395 P.3d 274, 278 (Cal. 2017) (observing that California's "state constitution has no case or controversy requirement imposing an independent jurisdictional limitation on our standing doctrine"); *Tax Found. of Hawai'i v. State*, 439 P.3d 127, 143 (Haw. 2019) (collecting examples of states where "standing is a prudential concern and not an issue of subject matter jurisdiction").

Wofsy's arguments on the subject matter jurisdiction defense rest entirely on the assertion that Sicre de Fontbrune had transferred his rights in the *astreinte* at the time he sought to liquidate it. That assertion, even if proven, does not establish a defect in the French courts' subject matter jurisdiction over the *Astreinte* Proceeding. Sicre de Fontbrune is entitled to partial summary judgment on this defense.

### III.    Lack of Personal Jurisdiction

A court applying California's Recognition Act must refuse to recognize a foreign-country judgment if the

"foreign court did not have personal jurisdiction over the defendant." Cal. Civ. Proc. Code § 1716(b)(2). But a court shall not refuse recognition for lack of personal jurisdiction if the defendant "voluntarily appeared in the proceeding, other than for the purpose of protecting property seized or threatened with seizure in the proceeding or of contesting the jurisdiction of the court over the defendant." Cal. Civ. Proc. Code § 1717(a)(2). We agree with the district court that Wofsy waived this defense through a voluntary appearance.

Courts applying other states' analogues to Section 1717(a)(2) have recognized that a voluntary appearance may occur "in the proceeding" either before or after judgment. *See CIBC Mellon Tr. Co. v. Mora Hotel Corp. N.V.*, 792 N.E.2d 155, 162 (N.Y. 2003) (quoting Restatement (Second) of Conflict of Laws § 33, cmt. b) (noting that a defendant may be deemed to have submitted to a court's jurisdiction by "taking steps in the action *after judgment either in the trial court or in an appellate court*"); *S.C. Chimexim S.A. v. Velcro Enters. Ltd.*, 36 F. Supp. 2d 206, 215 (S.D.N.Y. 1999) (defense waived where one of defendant's arguments in appellate proceedings in the foreign forum "concerned the merits of the underlying dispute"); *In re Transamerica Airlines, Inc.*, No. CIV.A. 1039-VCP, 2007 WL 1555734, at *10 (Del. Ch. May 25, 2007) (waiver where one of defendant's arguments on appeal went "to the *merits*" of the contested judgment). We have confirmed that this principle applies to California's Recognition Act. *See In re Rejuvi Lab'y, Inc.*, 26 F.4th 1129, 1134 (9th Cir. 2022) (holding that a defendant "waived its personal jurisdiction challenge by voluntarily appearing in [the trial court that had entered a default judgment] in its attempt to set aside the default judgment").

Wofsy "voluntarily appeared in the proceeding" by petitioning the *TGI* to set aside the 2012 Judgment. Wofsy does not specify the French procedural mechanism through which he brought the Review Proceeding in 2014, but contends that it was a "collateral attack" without a direct analogue in American law. The *Cour d'Appel* in 2018, however, characterized the application to set aside the 2012 Judgment as a *recours en révision* pursuant to Article 593 and subsequent provisions of the French Code of Civil Procedure. That chapter of the Code explains that this procedure is available only to one who has been a party to the judgment of which review is sought, and only for a limited set of reasons, including the discovery of false statements or certain documents. *Code de Procédure Civile* arts. 593–95 (Fr.). In this sense, a *recours en révision*— loosely translated as an "appeal for review"—resembles a motion to set aside a judgment under Rule 60 of the Federal Rules of Civil Procedure. We reject the argument that the Review Proceeding constituted a wholly separate action. *Cf. CIBC Mellon*, 792 N.E.2d at 162 (treating an application to a court to set aside its judgment as a voluntary appearance "in the proceedings"). The mere fact that the French courts viewed the Review Proceeding as untimely did not convert it into a separate "proceeding" from the one that resulted in the judgment.

Wofsy's voluntary appearance also reached beyond "protecting property seized or threatened with seizure in the proceeding or . . . contesting the jurisdiction of the court over the defendant[.]" *See* Cal. Civ. Proc. Code § 1717(a)(2). In the Review Proceeding, Wofsy argued that Sicre de Fontbrune had transferred his interest in the *astreinte*; that, therefore, the 2012 Judgment rested on a flawed assertion of standing; and that the judgment should be set aside. That effort does not fit within the safe harbor for protecting seized

property or disputing personal jurisdiction.[12]   It therefore
precludes Wofsy from asserting the personal jurisdiction
defense to recognition. *See id.*

The district court properly granted partial summary
judgment to Sicre de Fontbrune regarding the defense of lack
of personal jurisdiction.

## IV.   Insufficient Notice

The Recognition Act provides that a court may refuse to
recognize a foreign judgment if the "defendant in the
proceeding in the foreign court did not receive notice of the
proceeding in sufficient time to enable the defendant to
defend." Cal. Civ. Proc. Code § 1716(c)(1).   The district
court determined that issues of fact precluded summary
judgment regarding this defense.   Only Wofsy challenges
that determination.   The parties dispute the adequacy of two
efforts at notice: a failed effort to serve the summons and
complaint for the *Astreinte* Proceeding, and a letter that the
French *TGI* mailed to Wofsy after the first hearing in the
*Astreinte* Proceeding but before the *TGI* entered judgment.
Although the district court reserved issues for the fact finder
that should have been decided as a matter of law, we agree
with the district court's ultimate conclusion regarding this
defense.

The California Supreme Court has not clarified the
showing that a defendant must make to prove the insufficient
notice defense.   But we "will ordinarily accept the decision

---

[12] We need not conclude—as the district court did—that Wofsy
challenged the *merits* of the 2012 Judgment.   We simply observe that
Wofsy argued issues other than the two that Section 1717(a)(2) exempts
from triggering waiver of a defense based on lack of personal
jurisdiction.

of an intermediate appellate court as the controlling interpretation of state law, unless we find convincing evidence that the state's supreme court likely would not follow it." *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021) (cleaned up).

A California Court of Appeal[13] has held that a mere failure of actual notice does not prove the inadequate notice defense. Rather, the proponent of this defense must show the absence of notice "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Alfa-Bank*, 230 Cal. Rptr. 3d at 224 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). The applicable standard, in other words, aligns with the constitutional minimum for due process. *See id.* at 233. Under that standard, where "notice is a person's due," the "means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 225 (quoting *Mullane*, 339 U.S. at 315).

Wofsy urges us to depart from this rule and hold instead that a failure of actual notice proves this defense. He argues that if a failure of actual notice does not suffice, then this defense collapses into the "lack of personal jurisdiction" defense. According to Wofsy, that interpretation of the statute would render the insufficient notice defense mere

---

[13] A decision of a California Court of Appeal that is not in conflict with another appellate decision binds all inferior courts across the state. *Auto Equity Sales, Inc. v. Super. Ct. of Santa Clara Cnty.*, 369 P.2d 937, 940 (Cal. 1962) (en banc).

surplusage—a result that should be avoided. *See Delaney v. Super. Ct.*, 50 Cal. 3d 785, 799 (1990).

But we do not see "convincing evidence," *Mudpie*, 15 F.4th at 889, that the California Supreme Court would reject the Court of Appeal's interpretation of the insufficient notice defense. In *Alfa-Bank*, the Court of Appeal considered that the "notice ground may have broader application than the service of process prerequisite for personal jurisdiction." *Alfa-Bank*, 230 Cal. Rptr. 3d at 233 (citing *Isack v. Isack*, 733 N.W.2d 85 (Mich. Ct. App. 2007)). In *Isack*, the Court of Appeals of Michigan— interpreting the analogous provision of that state's codification of the Uniform Act—concluded that "recognition of a judgment may be declined where the defendant was aware, or waived notice, of the litigation, but where the defendant was not notified of certain actions taken within the suit." 733 N.W.2d at 86–87; *see also* Restatement (Fourth) of Foreign Relations Law § 484 (2018) (recognizing that "the notice requirement governs not just the initiation of a proceeding, but relevant actions taken within the suit"). Although the insufficient notice and personal jurisdiction defenses "overlap[ped]" under the particular facts of *Alfa-Bank*, the Court of Appeal recognized that they would not always do so. *See Alfa-Bank*, 230 Cal. Rptr. 3d at 233. We therefore accept the Court of Appeal's conclusion that the insufficient notice defense requires the proponent to prove the absence of a constitutionally adequate attempt at actual notice. *See id.*

We begin by considering whether the attempts to serve Wofsy before the October 2011 hearing constituted sufficient efforts at notice, despite their failure. An officer of the French *TGI* attempted to serve both defendants through procedures established in accordance with the

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965 ("Hague Service Convention"), 20 U.S.T. 361, T.I.A.S. No. 6638. The Hague Service Convention was "intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988). Its "primary innovation" is a requirement that each state party designate a "Central Authority" that can receive foreign requests for service of process and arrange for service on an addressee. *Id.* at 698–99; Hague Service Convention, 20 U.S.T. 361, art. 2.

In accordance with that procedure, the French court's officer sent the complaint and the French equivalent of a summons to the United States' Central Authority, and requested service on the defendants at their addresses as listed in the summons. The summons listed the address of Alan Wofsy & Associates as 401 China Basin Street in San Francisco. For Alan Wofsy himself, the summons listed Post Office Box 2210 in San Francisco.

Article 6 of the Hague Convention requires the Central Authority (or another designee of the state where process is to be served) to send to the applicant for service a certificate stating the method, place, date, and recipient of service, or the reasons that have prevented service. Hague Service Convention, 20 U.S.T. 361, art. 6. Accordingly, the *huissier's* requests for service also included requests for these certificates.

The U.S. process server's attempt to serve Alan Wofsy & Associates failed. The process server—a contractor of the U.S. Central Authority—issued a certificate of non-service

dated August 12, 2011, attesting that service had been
attempted at 401 China Basin Street; that no such address
existed; and that the process server had confirmed on the
U.S. Postal Service website that the address was "non
deliverable."[14]

Upon learning of a failure of notice, "[d]eciding to take
no further action is not what someone desirous of actually
informing [the addressee] would do; such a person would
take further reasonable steps if any were available." *Jones
v. Flowers*, 547 U.S. 220, 230 (2006) (internal quotation
omitted).  The Supreme Court accordingly held that a state
failed to afford constitutionally adequate notice where the
state sold a tax-delinquent property after the state's certified-
mail notice to the property owner was returned unclaimed
and the state failed to take further reasonable and available
steps to accomplish notice.  *Id.* at 239.  "Although the State
may have made a reasonable calculation" of how to reach
the property owner, the state had "good reason to suspect
when the notice was returned that [the addressee] was 'no
better off than if the notice had never been sent.'"  *Id.* at 230

---

[14] The delivery trouble apparently arose from the fact that San
Francisco renamed the old China Basin Street as "Terry Francois
Boulevard" in the 1990s, and reassigned the name "China Basin Street"
to a newly built road at some point after 2010.  But it is undisputed that
Wofsy continued to receive mail addressed to 401 China Basin Street for
years after the *Astreinte* Proceeding.  In any event, Sicre de Fontbrune
offers no indication that Wofsy was obligated to apprise Sicre de
Fontbrune or the French courts of any change of address at the time the
*Astreinte* Proceeding commenced.  Thus, there is no indication that
Wofsy is to blame for the *huissier's* use of an outdated address or for the
process server's failure to effect service.  *Cf. Alfa-Bank*, 230 Cal. Rptr.
3d at 230 (holding that a Russian court's mail service to a defendant's
last known address was adequate notice, where the defendant was
required by a surety agreement to keep his address up to date with the
Russian government).

(quoting *Malone v. Robinson*, 614 A.2d 33, 37 (D.C. 1992));
*see also United States v. Ritchie*, 342 F.3d 903, 911 (9th Cir.
2003) ("[W]hen initial personal notice letters are returned
undelivered, the government must make reasonable
additional efforts to provide personal notice.").

Since the French *huissier* had requested a certificate of
service in accordance with the Hague Service Convention,
the absence of any confirmation of successful service
signaled a problem. And the issuance of a certificate of non-
service left no doubt that service had failed. It thus triggered
an obligation to take any available and reasonable further
steps to give notice of the proceeding to Alan Wofsy &
Associates. *See Jones*, 547 U.S. at 230.

Before considering whether such steps were available or
pursued, we turn to the process server's attempt to inform
Alan Wofsy himself. It unfolded similarly. When the
*Astreinte* Proceeding was filed in July 2011, the U.S. Central
Authority received a request to serve process at "POB 2210
San Francisco"—the address listed for Alan Wofsy on the
French summons. The U.S. process server eventually issued
a certificate of non-service, indicating that a server had
attempted to contact Alan Wofsy at 401 China Basin Street
on October 22, 2011, but had found "[n]o such address."
The certificate of nonservice did not issue until October
31—six days after the October merits hearing in the *TGI*.

Under these circumstances, the failed service on Alan
Wofsy was as insufficient an attempt at notice as was the
failed service on Alan Wofsy & Associates. The request for
a certificate of service was unfulfilled at the time of the first
*astreinte* hearing. That should have alerted the *huissier* that
Wofsy might have lacked notice of the proceedings, and that
actual notice therefore might require further reasonable
efforts if any were available. Moreover, the certificate of

non-service issued more than two months before the *TGI* entered judgment.

Wofsy suggests several "further reasonable steps" to accomplish notice, *see id.*, that were available but went unpursued.    For example, it is undisputed that both defendants were successfully served in the instant proceedings at Alan Wofsy's residence, and that since 1998 the website of Alan Wofsy Fine Arts LLC has listed its gallery address on Geary Boulevard in San Francisco, where staff are available to accept deliveries during workdays. The record does not indicate any attempt to deliver notice of the *Astreinte* Proceeding at either of those addresses.

Sicre de Fontbrune claims that copies of the summons and complaint were mailed to Wofsy at P.O. Box 2210. But Wofsy contends that no such documents ever arrived. The Supreme Court has "repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice." *Tulsa Pro. Collection Servs., Inc. v. Pope*, 485 U.S. 478, 490 (1988). The Hague Service Convention allows mail service directly to a defendant—circumventing the Central Authority—if the receiving country has not objected to mail service and if mail service is authorized by otherwise applicable law. *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1513 (2017). The applicable law in California permits service via mail, with acknowledgment of receipt, at a Post Office box. Cal. Civ. Proc. Code § 415.30.

But the record does not support a finding that notice was mailed. It contains no evidence of any attempt at mail service apart from the failed attempt to send process to Alan Wofsy through the U.S. Central Authority. Indeed, Sicre de Fontbrune's brief specifies that the supposed mail service

was performed "via the Hague Convention Central Authority for the United States."[15]

Even if the U.S. process server had mailed notice to P.O. Box 2210, our conclusion as to the sufficiency of the service efforts would not change. The certificates requested pursuant to the Hague Service Convention revealed that neither defendant had been served. Taking no further steps to give notice would not have been the response of one "desirous of actually informing" the addressee. *Jones*, 547 U.S. at 229; *see also Mullane*, 339 U.S. at 315. The failed attempts to serve process do not, by themselves, disprove the notice defense.

There is, however, a factual dispute as to whether Wofsy received *actual* notice of the "pendency of the action and . . . an opportunity to present [his] objections." *Alfa-Bank*, 230 Cal. Rptr. 3d at 224; *see* Cal. Civ. Proc. Code § 1716(c)(1). Wofsy received mail correspondence from the

---

[15] Some confusion may originate from the *huissier's* request to serve Alan Wofsy at his U.S. Post Office box. The record contains no direct evidence that either the U.S. Central Authority or its process service contractor responded to that request by attempting mail service. To the contrary, it contains a form indicating that the U.S. process server sent the San Francisco postmaster as many as three requests for "boxholder information needed for service of legal process." *See* 39 C.F.R. § 265.6(d)(5)(ii) (2011) (current version at 39 C.F.R. § 265.14(d)(5)(ii)) (permitting disclosure of post office boxholder name and information to a person authorized to serve legal process). The Postal Service, in turn, provided an address for Alan Wofsy at 401 China Basin Street. That is where the certificate of nonservice on Alan Wofsy shows that the process server unsuccessfully attempted service. The documentation in the record is thus consistent with the possibility that the U.S. process server simply dispatched an agent to attempt personal service at the street address provided by the Postal Service, without ever attempting service by mail at P.O. Box 2210.

*TGI* in November 2011. The correspondence included a letter, dated November 16, 2011, accompanying a brief written order of the *TGI* based on the October 2011 *astreinte* hearing. That order included a half-page description of the October 2011 hearing that had occurred on Sicre de Fontbrune's claim for liquidation of the *astreinte*. It announced that because Wofsy had not appeared and Sicre de Fontbrune had failed to prove that Wofsy had been served, the proceedings would be reopened for another hearing on December 13, 2011, "for the production by [Sicre de Fontbrune] of the certificate from the foreign authority responsible for notification of the document instituting the proceedings," in accordance with Article 6 of the Hague Service Convention. The correspondence was entirely in French. Wofsy testified at a deposition in the present litigation, however, that he could "reasonably" read French.[16]

"Notice to be effective must be informative." *Julen*, 101 Cal. Rptr. at 798. The letter and order stated that a proceeding was pending. But the correspondence nowhere mentioned any remaining opportunity to argue the merits of Sicre de Fontbrune's claim for liquidation of the *astreinte*, even at the December 2011 hearing. The letter provided instructions only as to how to appeal the order. Because the letter omitted any mention of an opportunity to participate in the proceedings in the *TGI*—and, indeed, stated that the

---

[16] Wofsy directs us to *Julen v. Larson*, 101 Cal. Rptr. 796, 798 (Ct. App. 1972), for the proposition that notice, to be adequate, must be given in the "language of the jurisdiction in which [the defendant] is served," among other requirements. In *Julen*—unlike here—the foreign legal documents were written in German, which no one argued the defendant could read. *Id.* And *Alfa-Bank* later clarified that *Julen* did not "defin[e] constitutional 'requirements' for adequate notice." 230 Cal. Rptr. 3d at 232.

reopening of the hearing was for a specific purpose that did not include Wofsy appearing—we cannot say as a matter of law that the letter was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Alfa-Bank*, 230 Cal. Rptr. 3d at 224 (citation omitted).

Whether it actually resulted in notice, however, is disputed. Wofsy avers that the correspondence led him to believe that it was already too late to raise a defense in the proceedings. But some evidence suggests that the letter, despite its deficiencies, may have accomplished actual notice. The declaration of Sicre de Fontbrune's French counsel—cited by Sicre de Fontbrune in his response, and unchallenged in Wofsy's reply—indicates that French procedural rules in fact would not have precluded Wofsy from asserting a defense on the merits even after he received the November 2011 mailing. And past copyright litigation had given Wofsy more than five years of familiarity with French litigation.

There accordingly remains a factual dispute about the effect of the November 2011 correspondence on Wofsy's knowledge of his options. The district court appropriately left to the finder of fact to determine whether Wofsy "receive[d] notice of the proceeding in sufficient time to enable [him] to defend." Cal. Civ. Proc. Code § 1716(c)(1).

## V. Fraud

A court may refuse to recognize a foreign judgment if the judgment "was obtained by fraud that deprived the losing party of an adequate opportunity to present its case." Cal. Civ. Proc. Code § 1716(c)(2). Wofsy challenges the district court's determination that disputes of material fact precluded

summary judgment in Wofsy's favor based on alleged fraud in the French proceeding. Wofsy asserts that Sicre de Fontbrune falsely represented to the *TGI* in the *Astreinte* Proceeding that he owned the copyrights to the photographs at issue, and that Sicre de Fontbrune failed to disclose that he no longer had an interest in liquidating the *astreinte* that would make his claim admissible. *See Code de Procédure Civile* arts. 31, 32 (Fr.).

The comments to the 2005 Uniform Act—on which California's Recognition Act is based, *Alfa-Bank*, 230 Cal. Rptr. 3d at 221—explain that the language used in Section 1716(c)(2) refers only to "extrinsic fraud." Unif. Foreign-Country Money Judgments Recognition Act § 4 cmt. 7 (Nat'l Conf. of Comm'rs on Unif. State L. 2005). Examples of extrinsic fraud include instances where "the plaintiff deliberately had the initiating process served on the defendant at the wrong address, deliberately gave the defendant wrong information as to the time and place of the hearing, or obtained a default judgment against the defendant based on a forged confession of judgment." *Id.* Extrinsic fraud differs from intrinsic fraud, which includes "false testimony of a witness or admission of a forged document into evidence during the foreign proceeding." *Id.* Those are concerns that "should be raised and dealt with in the rendering court." *Id.*

California caselaw indicates that concealing material information from a court can, in some circumstances, constitute extrinsic fraud. For example, in *Pentz v. Kuppinger*, a plaintiff sought restitution for "assertedly excessive amounts collected by defendant under a Mexican judgment" that the defendant had obtained against the plaintiff. 107 Cal. Rptr. 540, 541 (Ct. App. 1973). The court held that the plaintiff had alleged extrinsic fraud against the

creditor of the foreign judgment, because the judgment-creditor had failed to disclose to the plaintiff or to the courts that the judgment-creditor already had received payments that would have reduced the amount of the foreign judgment. *Id.* at 544–45. The plaintiff allegedly had inquired about some of these payments while the foreign action was pending, but the defendant's attorney had denied knowledge of them. *Id.* at 544 n.5. As to other payments, the Court of Appeal observed that the plaintiff "had not even a suspicion that credit should have been given." *Id.* at 544. Taking the complaint's allegations as true, then, the "plaintiff was denied the opportunity to acquaint the [Mexican] court" with information crucial to her case. *Id.* at 545. The court accepted that this conduct would constitute extrinsic fraud, concluding that on the alleged facts of the case, the plaintiff "was denied her day in court as to *all* of the issues tendered by her pleading[.]" *Id.* (italicization in original).

Sicre de Fontbrune stated in his 2011 complaint in the *Astreinte* Proceeding that he owned the copyrights to the photographs that the resulting judgment found to have been copied. In fact, as the French *Cour d'Appel* later confirmed in a separate copyright infringement proceeding, Sicre de Fontbrune had transferred those copyrights in December 2001 to a business entity. Whether this false representation mattered depends on whether Sicre de Fontbrune nonetheless retained a legal interest in liquidating the *astreinte* after transferring the relevant intellectual property that the *astreinte* was awarded to protect. That is, at least in part, a question of French law.

We need not resolve it in this appeal. Even assuming that Sicre de Fontbrune deceived the *TGI* as to his legal interest in the *astreinte*, Wofsy is not entitled to summary judgment on the claim that the misrepresentation "deprived

[him] of an adequate opportunity to present [his] case." *See* Cal. Civ. Proc. Code § 1716(c)(2). The misrepresentation may have enabled Sicre de Fontbrune to obtain the *astreinte* judgment. But unlike the party asserting fraud in *Pentz*, Wofsy did not participate in the proceeding to liquidate the *astreinte*. He accordingly did not request evidence that was denied. *Cf. Pentz*, 107 Cal. Rptr. at 544 n.5. Moreover, Sicre de Fontbrune affirmatively represented in his complaint that he owned the copyrights. That fact suggests that if Wofsy had participated in the *Astreinte* Proceeding, he might have had occasion to question that assertion. *Cf. id.* at 544 (losing party "had not even a suspicion" regarding the concealed information). For the reasons discussed with respect to the notice defense, whether Wofsy had a valid explanation for failing to mount a defense in the *Astreinte* Proceeding is subject to factual dispute.

A question thus remains as to whether Wofsy reasonably should have detected the alleged fraud during the French proceedings—and, therefore, as to whether such fraud deprived him of an adequate opportunity to present his case. The district court did not err by denying Wofsy summary judgment on the fraud defense.

## CONCLUSION

Wofsy was not entitled to summary judgment based on the public policy defense. No other ground for nonrecognition at issue in this appeal supplies an alternative basis for affirming the judgment below. We therefore **REVERSE** and **REMAND** for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

United States Court of Appeals for the Ninth Circuit

**Office of the Clerk**
95 Seventh Street
San Francisco, CA 94103

**Information Regarding Judgment and Post-Judgment Proceedings**

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36. Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise. To file a motion to stay the mandate, file it electronically via the appellate ECF system or, if you are a pro se litigant or an attorney with an exemption from using appellate ECF, file one original motion on paper.

**Petition for Panel Rehearing (Fed. R. App. P. 40; 9th Cir. R. 40-1)**
**Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

(1)   A.   **Purpose (Panel Rehearing):**
- A party should seek panel rehearing only if one or more of the following grounds exist:
  - ▶ A material point of fact or law was overlooked in the decision;
  - ▶ A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
  - ▶ An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

   B.   **Purpose (Rehearing En Banc)**
- A party should seek en banc rehearing only if one or more of the following grounds exist:

> ► Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
> ► The proceeding involves a question of exceptional importance; or
> ► The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2)   Deadlines for Filing:**
- A petition for rehearing may be filed within 14 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- *See* Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication.  9th Cir. R. 40-2.

**(3)   Statement of Counsel**
- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist. The points to be raised must be stated clearly.

**(4)   Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**
- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- A response, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

- The petition or response must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms*.
- You may file a petition electronically via the appellate ECF system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

## Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms*.

## Attorneys Fees
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-7806.

## Petition for a Writ of Certiorari
- Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov

## Counsel Listing in Published Opinions
- Please check counsel listing on the attached decision.
- If there are any errors in a published opinion, please send an email or letter **in writing within 10 days** to:
  - ▶ Thomson Reuters; 610 Opperman Drive; PO Box 64526; Eagan, MN 55123 (Attn: Maria Evangelista (maria.b.evangelista@tr.com));
  - ▶ and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 10. Bill of Costs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form10instructions.pdf*

**9th Cir. Case Number(s)**

**Case Name**

The Clerk is requested to award costs to *(party name(s))*:

I swear under penalty of perjury that the copies for which costs are requested were actually and necessarily produced, and that the requested costs were actually expended.

**Signature**                   **Date**

*(use "s/[typed name]" to sign electronically-filed documents)*

| COST TAXABLE | REQUESTED *(each column must be completed)* | | | |
|---|---|---|---|---|
| DOCUMENTS / FEE PAID | No. of Copies | Pages per Copy | Cost per Page | TOTAL COST |
| Excerpts of Record* | | | $ | $ |
| Principal Brief(s) *(Opening Brief; Answering Brief; 1st, 2nd , and/or 3rd Brief on Cross-Appeal; Intervenor Brief)* | | | $ | $ |
| Reply Brief / Cross-Appeal Reply Brief | | | $ | $ |
| Supplemental Brief(s) | | | $ | $ |
| Petition for Review Docket Fee / Petition for Writ of Mandamus Docket Fee / Appeal from Bankruptcy Appellate Panel Docket Fee | | | $ | |
| | | | **TOTAL:** | $ |

***Example:** Calculate 4 copies of 3 volumes of excerpts of record that total 500 pages [Vol. 1 (10 pgs.) + Vol. 2 (250 pgs.) + Vol. 3 (240 pgs.)] as:*
*No. of Copies: 4; Pages per Copy: 500; Cost per Page: $.10 (or actual cost IF less than $.10);*
*TOTAL: 4 x 500 x $.10 = $200.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*